**In re 30 HILL TOP STREET CORPO-RATION d/b/a Hilltop Manor Nursing Home, Debtor.**

**Bankruptcy No. 83–01466–JG.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 30, 1984.

---

Despena F. Billings, Asst. Atty. Gen., and Marshall Schribman, Boston, Mass., for debtor.

John Desmond, Maloney Gallagher and Desmond, Boston, Mass., trustee.

## MEMORANDUM

JOHN N. GABRIEL, Bankruptcy Judge.

The Motion To Dismiss this Chapter 7 case filed by the Commonwealth of Massachusetts Department of Public Health ("the Commonwealth") on August 7, 1984 came before me for emergency hearing at the request of the Commonwealth on August 8, 1984. Notice of the emergency hearing and copies of the Motion were provided to the Chapter 7 Trustee, his counsel, the United States Trustee, debtor's counsel, counsel to the Chapter 11 creditor's committee, counsel to debtor's landlord, taxing authorities and certain creditors. Prior to the emergency hearing on the Motion to Dismiss, the Court had held numerous hearings on the continued operation of the debtor's business. Based upon a review of the pleadings on file, affidavits submitted in this proceeding by the Commonwealth and after hearing argument of all interested parties, I find the following facts.

This case was filed as a voluntary Chapter 11 proceeding on October 24, 1983. The debtor operated a nursing home of approximately eighty-six patients, all subsidized under the Medicaid program administered by the Department of Public Welfare. The nursing home totally relies on Medicaid reimbursement for its revenues. The procedure for reimbursement is administered by the Massachusetts rate setting commission, which sets an interim provisional rate, paid on a monthly basis. In this case the debtor's interim rate was $33 (approximate-

ly) as of the date of the filing. At the end of the year, the Commission is required to set a final rate, which results in either an underpayment or an overpayment to the home.

The debtor's schedules state tax liabilities of $250,000, general unsecured liabilities of $125,000, and no secured debt. The Schedules list the debtor's assets as $6100 in cash, $15,000 in inventory and equipment and $155,000 in unspecified accounts receivable from the Commonwealth (assumedly for Medicaid underpayments).

The debtor operated as a debtor in possession until June 21, 1984 when this Court appointed a Chapter 11 trustee. Pleadings filed by the trustee on June 28, 1984 brought to this Court's attention for the first time the Department of Public Health's allegations of numerous deficiencies in the health care services which threatened the health and safety of the patients. The deficiencies remained uncorrected. The Department, on June 26, 1984 ordered no new patient admissions. After a hearing this Court refused to enjoin the Department's enforcement of this directive because it was in furtherance of its regulatory and police power and in the public interest, thus excepted from the automatic stay. See 11 U.S.C. Section 362(b)(4).

The trustee filed a Motion to Convert the Chapter 11 case to a case under Chapter 7 (liquidation) on July 19, 1984, on the grounds that there were $120,000 in administrative expenses since the filing. The home was operating at substantial losses and was unable to continue operations at the rate set by the Commonwealth. The trustee did not have funds to correct the deficiencies in health care cited by Public Health. All interested parties supported conversion. The Court allowed the Motion to Convert to Chapter 7 because of the continuing losses, diminution of the estate, and no likelihood of reorganization. However, in order to avoid any harm to the patients resulting from closing the home and requiring transfers, I allowed the trustee to operate the home for a limited period pursuant to 11 U.S.C. Section 721. At the hearing the Court suggested that the Commonwealth and the trustee formulate a plan for an orderly wind-down of operations including a revised rate and, in the alternative, that the case be dismissed so that a state court receiver could be appointed to assume operations of the home. Because of the need for immediate action I scheduled a further hearing on the trustee's authority to operate the business for August 3, 1984. On July 31, 1984 the debtor filed a Motion to Dismiss.

At the hearing on August 3, 1984 the Commonwealth reported that the Rate Setting Commission was in the process of approving an emergency rate of approximately $40 per day. The trustee's accountant, upon examination by the Commonwealth testified that this was insufficient to pay current costs, did not include any costs of repairs or expenses of administration, including the compensation of the trustee, and his counsel. The Court again suggested that the Commonwealth seek appointment of a receiver. The Commonwealth's representative stated that there were jurisdictional problems with this proposal. Because of the continuing crisis, I again authorized the trustee to operate the nursing home until August 8, 1984.

Subsequent to the hearing on August 3, the trustee filed a Motion for Leave to Abandon, which requested leave to abandon the debtor's operations but sought to retain assets of the estate. The trustee noticed out the proposed abandonment with an objection deadline of August 7, 1984. Three objections were filed to the Motion. At an emergency hearing on August 8, 1984, I denied the Trustee's Motion, because the notice was procedurally deficient. It attempted to dispense with the requirement of notice to all creditors and the fifteen day objection period. See Bankruptcy Rule 6007. Moreover, I disallowed the Motion because the proposed abandonment would return the property to the debtor, see In Re Gassaway, 28 B.R. 842 (Bankr. N.D. Miss.1983), who is in no position to correct the deficiencies in health care ser-

vices or to operate the nursing home without substantial losses.

On August 7, 1984 the Commonwealth filed its Motion to Dismiss the Chapter 7 case, with a request for an emergency hearing prior to August 8, 1984. I granted the emergency hearing. Although no objections to the notice procedure on the Motion to Dismiss were raised, I find the emergency notice was appropriate for the following reasons. 11 U.S.C. Section 707, governing dismissal of a Chapter 7 case, provides that the court may dismiss a case only "after notice and a hearing and only for cause". "After notice and a hearing" is defined in the Code as after such notice as is appropriate in the particular circumstances of a case. 11 U.S.C. Section 102(1)(A). The Court may dispense with an actual hearing in an emergency. 11 U.S.C. Section 102(1)(B)(ii). The Rules provide for a twenty-day notice to all creditors on the hearing on dismissal. Bankruptcy Rule 2002(a)(5); Rule 1017(a). This procedure may be reduced by order of court with or without motion. Rule 9006(c)(1) and (2). A two day notice of the hearing on dismissal has been held appropriate in emergency circumstances in order to accomplish the transferral to the supervision of the state court of a hazardous waste facility which posed a threat to public safety where the case was impossible to administer in bankruptcy. *In Re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr. D. Mass.1983). A two hour notice of hearing on a request for relief from stay was held appropriate in an emergency situation where the request raised no new issues and the parties were fully prepared to go forward on the merits of the request. *Matter of Holtkamp*, 669 F.2d 505, 509 (7th Cir. 1982).

Here, one day's notice of the emergency hearing on dismissal was provided all interested parties. No objections to the notice procedure were made. Indeed, all parties had been aware, since July 27, 1984, that the Court believed that dismissal was the appropriate solution to the trustee's inability to operate the home, so that a state court receiver with the resources and authority set forth in the state statute could be appointed. *See infra*, at 6–7. Since the Trustee's authority to operate was to expire on August 8, 1984, and the Commonwealth was unwilling to seek a state court receiver in the absence of dismissal, an immediate hearing with reduced notice was required.

Dismissal was the only solution to this regretful case in order to avoid harm to the patients residing in this nursing home. The Department of Public Health is charged with the responsibilities of licensing, regulating, and inspecting nursing homes. *See M.G.L.* c. 111 Sections 71, 72. Where violations of state law or regulations exist, an emergency procedure exists under state law for the immediate appointment by the Superior Court of a receiver to assume total control of the home in order to "safeguard the safety and continuity of care to the residents and to protect them from the adverse health effects and increased risk of death caused by abrupt or unsuitable transfer." *M.G.L.* c. 111 Section 72N. In furtherance of this purpose the receiver is granted wide and complete powers including: total control of the facility; authority to remedy violations of state or federal law; hiring and firing powers; authority to pay debts; power to avoid mortgages or leases; and, most importantly, authority to borrow money from the Department of Public Health to prevent closure of a facility. *M.G.L.* c. 111 Section 72O. The receiver is entitled to compensation established by the Superior Court, *M.G.L.* c. 111 Section 72O; the Rate Setting Commission may adjust a facility's rate to insure payment of the receiver. *M.G.L.* c. 6A Section 34.

In contrast, the Bankruptcy Court is powerless to compel any extension of credit to the trustee. 11 U.S.C. Section 364. The trustee is obligated to manage the business in compliance with state law, 28 U.S.C. Section 959, and in this case he has neither sufficient funds to operate, nor correct the violations of state law. Although administrative expenses such as post-petition trade payables and professional fees have first

priority in the order of distribution, *see 11 U.S.C.* Section 726, 507, 503, where there are insufficient assets to pay administrative expenses, the claims must be prorated according to available funds. In this case, it appears that there are insufficient funds to pay all Chapter 7 administrative expenses, and Chapter 11 administrative expenses will remain unsatisfied.

■ The Bankruptcy Court may dismiss a Chapter 7 case for good cause. 11 U.S.C. Section 707. Where a bankruptcy case is impossible to administer because of lack of funds and the presence of a threat to public safety, the bankruptcy court has the duty to dismiss the case in order to return the case to a forum with appropriate authority and remedial powers. In *In Re: Charles George Land Reclamation Trust,* 30 B.R. 918 (Bankr. D. Mass.1983) the court found adequate cause for dismissal where it would be impossible for any bankruptcy trustee to manage the debtor's hazardous waste facility, which required five to ten million dollars in cleanup costs. Noting that the case was incapable of administering, the Court stated:

"This was not a bankruptcy case where assets could be liquidated, claims adjudicated, and a distribution made within a relatively short period of time, but rather it was and is an ongoing environmental nuisance that threatens the health safety and well-being of the people who surround it. The dismissal of this case was a recognition by this Court that the appropriate forum to redress and correct this environmental nuisance in the most expeditious and efficient manner was the state court. This Court had neither the resources, the expertise, nor, for that matter, a suitably qualified trustee with experience in hazardous waste management, to do other than to allow the resolution of this matter by the continuing efforts of the appropriate state court. The specter of a dividend in this case was not sufficient to justify the exposure of the surrounding populace to the possibility of a reoccurence of another leachate discharge, similar to that which took

place during the debtor's Chapter 11 proceedings. Dismissal, with the concomitant elimination of the automatic stay, would allow the EPA and the DEQE to assert their full panoply of powers under the Federal and State superfund statutes. *Id.* at 924–925.

■ This case is also incapable of administering as a bankruptcy case. The trustee is unable to operate in compliance with state law as required by 28 U.S.C. Section 929 because he has no funds to correct the numerous deficiencies in health care cited by the Department of Public Health. In addition, the Trustee has insufficient funds to pay the costs of operating the nursing home even in a Chapter 7 liquidating posture. The general unsecured creditors are not prejudiced by a dismissal because there was no possibility of a dividend to them, in view of the Chapter 11 expenses of administration ($120,000) and substantial priority tax liabilities ($250,000), when compared with tangible assets of $25,000, and a contingent claim of $155,000 against the Commonwealth the success of which is speculative.

Emergency dismissal is the sole remedy which will protect the health and safety of the patients, because the Commonwealth refuses to request the appointment of a state court receiver who has the power and resources to take over the home in the absence of a dismissal. Throughout this proceeding the Commonwealth has insisted that it is the responsibility of the trustee to operate the home, even though revenues are inadequate. Despite the courts' suggestion on two occasions that a receiver with authority and resources to operate the home be appointed, the Commonwealth refused to commence the process for the takeover of the home. Instead, the Commonwealth seeks to foist upon this impecunious trustee the responsibility of the approximately eighty-five patients for apparently an unlimited duration, when he is not only unable to pay the costs of operation (even in a wind-down posture) but is acting as a volunteer. Indeed, the Commonwealth now threatens the trustee personally with a

law suit. The Commonwealth seeks to impose an impossible burden on the Chapter 7 trustee.

The Commonwealth now moves to dismiss the case from this Court as it is unwilling to seek a receiver with this case pending because it is unable to compensate a receiver where the facility is in bankruptcy. *See* M.G.L. c. 6A, Section 32A. The Court seriously doubts the merits of the Commonwealth's assertion that it is unable to obtain the appointment of a receiver in a pending bankruptcy case. In fact, in a case pending in this district, the Commonwealth obtained the emergency appointment of a receiver of a nursing home after the filing within two days of its request. *See In Re Perulco, Inc.,* Case No. 84–00866–L. There is ample authority that a state's action against a nursing home in the exercise of its police and regulatory power is exempt from the automatic stay. 11 U.S.C. Section 362(b)(4); *In Re Lawson Burich Associates, Inc.* 31 B.R. 604 (S.D.N.Y. 1983). Here, the existence of numerous health care deficiencies would bring this case within the exemption. Despite the effect of what I view to be the controlling law, I have no doubt that the Commonwealth will continue in its unreasonable refusal to seek the appointment of a state court receiver. Based upon the Commonwealth's representation that it is unwilling to seek the emergency appointment of a receiver in the absence of dismissal, I grant the Commonwealth's Motion to Dismiss with the full expectation that it will immediately seek the appointment of a receiver of this facility.