**In re Ilene Ruth MOSES, Debtor.**

**No. 91–77127.**

United States District Court,
E.D. Michigan, S.D.

June 10, 1992.

David J. Vigna, Farmington Hills, Mich., for Michigan Nat. Bank.

Peter A. Jackson, Detroit, Mich., for debtor. Minna K. Katz, W. Bloomfield, Mich., for Unsecured Creditor Belvoir Designs, Ltd. Ptshp.

## OPINION AND ORDER VACATING THE BANKRUPTCY COURT'S ORDER DENYING MICHIGAN NATIONAL BANK'S MOTION TO DISMISS

ROSEN, District Judge.

### INTRODUCTION

This matter is before the Court on creditor Michigan National Bank's ("MNB") December 27, 1991 Notice of Appeal. MNB wishes to prevent Debtor Ilene Ruth Moses from proceeding with her Chapter 7 bankruptcy petition. To this end, MNB filed a motion to dismiss in the bankruptcy court. This motion was denied. MNB now appeals this decision.

## FACTS [1]

The Debtor has an ownership interest in Jolland Limited, a Hong Kong corporation. According to MNB, Jolland is owed tens of millions of dollars in accounts receivable by an international clothing cartel referred to as "Romtex." MNB claims that only the Debtor (or her English lawyers) knows the identities of the persons owing the accounts receivable ("account debtors").

In an August 9, 1991 Opinion, this Court held that the Debtor properly asserted her Fifth Amendment privilege against self-incrimination in refusing to answer her creditors' questions regarding the identities of the account debtors. *See Moses v. Allard,* 779 F.Supp. 857 (E.D.Mich.1991).

MNB claims that it has recently learned that the Debtor's English counsel had been negotiating with the account debtors for repayment of the above receivables, the amount in question allegedly being in excess of that needed to pay all the creditors of this estate. MNB moved for dismissal without prejudice in the bankruptcy court on the theory that the Debtor's inability to provide information about those assets required a dismissal until such time as the Debtor's Fifth Amendment apprehensions are no longer present. Creditor Semifora A.G. supported this motion.[2] According to MNB, the trustee, David Allard ("Trustee"), acknowledged that he was unable to administer the assets because of the lack of information about the account debtors.

After a hearing, the bankruptcy court denied MNB's Motion to Dismiss. Judge Graves appeared to hold that regardless of the effect that the Debtor's refusal to testify might have on the Trustee's ability to administer the estate, he was constitutionally and statutorily proscribed from dismissing the case based on the Debtor's invocation of the privilege. On the record, he said:

THE COURT: Cause has not been demonstrated to dismiss this case. That motion is denied.

I had initially thought that I would take the matter under advisement and write something elaborate which would only be appealed, so there is no point in wasting everybody's time to do that.

I recognize that the claim of the Fifth Amendment privilege is perceived by some creditors as an impediment in this case.

Be that as it may, it does not rise to the level of cause to dismiss.

This is probably going to continue to be a long, tortured and expensive affair.

I wish there were a better system.

*I have to deal with what I have been given by the Congress of the United States, and they have not given me any command or direction that says that when a party claims a Fifth Amendment privilege, and that claim impedes access to information, that that is a basis for dismissal.*

There may be some case authority that suggests that. I am disinclined to follow it.

I don't think it is a fair result for all of the parties in this case to dismiss this Chapter 7 Petition because of a claim of a Fifth Amendment privilege.

There may be other ways around it, which I won't suggest at the moment, but I am not practicing law, and I have said enough about that....

(Emphasis added.)

This appeal followed.[3]

## DISCUSSION

The issue before the Court is whether the Debtor's refusal to provide information on the basis of her Fifth Amendment privilege constitutes cause to dismiss the bank-

---

**1.** This section sets forth only those facts relevant to the instant issue. A more thorough treatment of the facts in this matter is presented in *Moses v. Allard,* 779 F.Supp. 857 (E.D.Mich. 1991).

**2.** MNB alleges that, together, MNB and Semifora hold $28,369,084.00 of the $31,101,259.00

total unsecured claims as reported in the Debtor's schedules.

**3.** The Court emphasizes at the outset that it is reviewing only the *legal* basis for the bankruptcy court's decision. The Court will not consider or decide at this time any factual issue presented in this case.

ruptcy action under 11 U.S.C. § 707(a).[4] This issue actually has two components. First, the threshold issue of whether any refusal of a debtor, regardless of the reason, to provide information may provide cause to dismiss the bankruptcy case. Second, if so, whether a dismissal may be based upon a debtor's refusal to provide information pursuant to a proper invocation of the Fifth Amendment privilege. As this is an issue of law, the standard of review is *de novo*. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961).

The issue is difficult in that it involves a rather complex interaction (if not conflict) between two important rights and public policies: the constitutional right of a debtor to be free from compulsory self-incrimination and the statutory right of a creditor to know the assets of a debtor in bankruptcy. At the most fundamental level, this Court must decide whether these two rights are mutually exclusive—in which case, of course, the statutory right is superseded— or whether they may be coordinated to protect both rights.

## I. WHETHER RELEVANT STATUTORY LANGUAGE AND CASE LAW PERMIT A § 707(a) DISMISSAL BASED ON TRUSTEE'S INABILITY TO ADMINISTER THE ESTATE WHEN DEBTOR FAILS OR REFUSES TO PROVIDE INFORMATION

Both statutory language and case law indicate that a debtor must cooperate with the trustee in the administration of the estate. Under the section on debtor's duties, the Bankruptcy Code says that the debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(3). The Bankruptcy Rules add that "[i]n addition to performing other duties prescribed by the Code and rules, the debtor shall ... cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate." Bankruptcy Rule 4002(4).

As part of this cooperation, a debtor is required by the Bankruptcy Code to testify as to matters relating to his assets. Section 343 reads, in relevant part: "The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title." 11 U.S.C. § 343. The legislative history of this section reads, in relevant part: "The purpose of the examination is to enable creditors and the trustee to determine if assets have improperly been disposed of or concealed or if there are grounds for objection to discharge." H.R. No. 95–595, 95th Cong., 1st Sess. 332 (1977), U.S.Code Cong. & Admin.News 1978, p. 6288.

Given this broad objective, it is reasonable to assume that dismissal may be premised on the failure of a debtor to perform his duties, including the duty to cooperate with the trustee and provide the requisite information. In fact, one of the non-exhaustive examples under § 707(a) provides for dismissal on a motion by the United States trustee for failure of the debtor to timely provide a list of creditors, a schedule of assets and liabilities, a schedule of current income and expenditures, and a statement of financial affairs.[5]

---

**4.** Title 11 U.S.C. § 707(a) provides:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

Dismissal for cause is not limited to the above three examples which are illustrative but not exhaustive. *In re Zick*, 931 F.2d 1124, 1126 (6th Cir.1991); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

**5.** Specifically, a debtor must comply with § 521(1). That section provides:

The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.

Case law also supports the conclusion that dismissal may be premised on a debtor's failure to provide a trustee with necessary information. Initially, the Court observes that courts have generally permitted dismissal when a trustee, for whatever reason, is unable to administer the estate. *In re 30 Hilltop Street Corp.*, 42 B.R. 517 (Bankr.D.Mass.1984) (chapter 7 case commenced by owner of nursing home dismissed because trustee had insufficient funds to correct numerous health care deficiencies); *In re Import Toy Sales*, 41 B.R. 784 (Bankr.S.D.Fla.1984) (inability of corporate debtor to appear for examination due to hospitalization of debtor's principal officer); *In re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr.D.Mass. 1983) (chapter 7 case filed by owner of waste disposal facility dismissed because no trustee could manage the debtor's property in compliance with state environmental laws).

Clearly, a debtor's failure to provide information about an estate may render a trustee unable to administer that estate. In such cases, it is possible that neither the creditors nor the trustee would be able to determine the assets of the estate and would thereby be precluded from effectuating a just bankruptcy discharge. Under such circumstances, a court may dismiss a case on the ground that the trustee is unable to administer the estate for lack of information from the debtor. *Scarfia v. Holiday Bank*, 129 B.R. 671, 675 (M.D.Fla. 1990) (bankruptcy court can dismiss, *sua sponte*, a petition that cannot be administered due to a debtor's refusal to provide information); *In re Steinmetz Group Ltd.*, 85 B.R. 633 (Bankr.S.D.Fla.1988) (dismissal with prejudice where debtor failed to appear at meeting of creditors).

■ In sum, as a trustee's inability to administer the estate may constitute cause for dismissal under 707(a); and as a debtor's refusal to provide information may render a trustee unable to administer an estate; it follows that a debtor's refusal to provide information may constitute cause for dismissal under § 707(a).

The Debtor counters that courts generally dismiss petitions only when a debtor has disobeyed a court order or is otherwise at fault. Although the Debtor is correct that petitions may and have been dismissed when a debtor is at fault, the Debtor is incorrect in asserting that bad faith is a *condition* of dismissal under § 707(a). Neither the plain language of § 707(a) nor its legislative history states that fault or bad faith is a requirement of a "for cause" dismissal. In fact, the *Scarfia* court found that dismissal was appropriate even though the debtor had validly established his Fifth Amendment right to refuse to respond to the creditors' questions. *Scarfia*, 129 B.R. at 675. Nor is the Debtor able to produce any case which has established fault as a condition of dismissal. In fact, Debtor herself notes that Chapter 7 cases have been dismissed without a finding that the debtor was at fault. *In re Charles George Land Reclamation Trust, supra; In re 30 Hill Top Street Corporation, supra.*[6]

## II. WHETHER A VALID ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE PROVIDES AN ABSOLUTE BAR TO AN OTHERWISE VALID § 707(a) DISMISSAL

Having determined that the bankruptcy court may dismiss an action for cause because of a debtor's refusal to provide information—whether or not that refusal is justified—this Court must determine whether dismissal is proscribed when the cause of a debtor's refusal to provide information is his valid reliance on the Fifth Amendment privilege against self-incrimination. In other words, it must determine whether the

---

11 U.S.C. § 521(1).

**6.** The Court observes that 11 U.S.C. § 305(a) provides for dismissal (or abstention) when such would be in the interest of creditors and debtor. Section 305(a), like § 707(a), makes no mention of bad faith or fault as a condition of dismissal. That section reads, in relevant part:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
> (1) the interest of creditors and the debtor would be better served by such dismissal or suspension.
> 11 U.S.C. § 305(a).

invocation of the privilege serves as an exception to the rule regarding for cause dismissal under § 707(a).

Although the Fifth Amendment privilege may validly be asserted to shield a debtor from incriminating himself through testimony, courts have generally not permitted those asserting it to benefit by denying, in civil actions, opposing parties their statutory rights. Several cases indicate that reliance on the privilege is insufficient to defend against a dismissal when the withheld information prevents the trustee from administering the estate. In *In re Connelly*, 59 B.R. 421 (Bkrtcy.N.D.Ill.1986), the debtor filed a voluntary petition under Chapter 7 and then made a blanket assertion of his Fifth Amendment privilege and refused to answer all substantive questions. Although the bulk of the *Connelly* opinion focuses on the need for the debtor to narrow his assertion of the privilege, the court also discussed, in a section on available remedies, the ability of a court to dismiss a bankruptcy petition when a debtor asserts his Fifth Amendment privilege. The court placed special emphasis on the trustee's duty to administer the estate and his consequent need for a broad range of information. A debtor, said the court, may not, by asserting the privilege, undermine the essential function of a bankruptcy proceeding:

> But it may well come to pass that Connelly meets his burden, that he answers questions and supplies property and documents as ultimately ordered by this court or is excused from doing so. These proceedings may thereby unfold in such a manner that leaves trustee with insufficient unprivileged information and less than all of debtor's property. Trustee may not be able to administer this case satisfactorily or at all. *Congress certainly did not intend assertion of the Fifth Amendment to paralyze the bankruptcy court. When a court cannot grant relief on a bankruptcy petition, it should be able to dispose of the case.*

\*     \*     \*     \*     \*     \*

Indeed, it would work a fraud on this court, on the entire bankruptcy system, and on Connelly's creditors to permit him to withhold information and documents, obtain his discharge, and walk off with most or all of his unsurrendered property. *A debtor may not turn the shield of the Fifth Amendment into a sword to cut his way to a discharge while carrying his property with him. His case will be dismissed, rather than permit that.* He may file and seek discharge at a later date after his apprehensions of prosecution have ended.

*Id.* at 447–48 (citation omitted) (footnote omitted) (emphasis added).

The Sixth Circuit earlier made a similar finding when, in dicta cited by the *Connelly* court, it said that with respect to documents, a "[v]oluntary bankruptcy proceeding could simply be dismissed if debtor refused to surrender such records. This would not violate any asserted privilege." *Butcher v. Bailey*, 753 F.2d 465, 467 n. 3 (6th Cir.), *cert. dismissed*, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). *See also Scarfia*, 129 B.R. at 675 ("While a debtor is entitled to invoke his fifth amendment right to refuse responses in a bankruptcy proceeding, a discharge in bankruptcy is neither an inherent nor a constitutional right" (citation omitted)).

This Court has held that the Fifth Amendment privilege could not provide a basis for refusal by a trustee to turn over records which that trustee was required by statute to keep, nor could the privilege be asserted to support a refusal to create reports which the trustee was statutorily mandated to generate and provide. *In re Grand Jury Proceedings*, 119 B.R. 945, 950 (E.D.Mich.1990) ("[I]n voluntarily undertaking the position of trustee, Sharpe took on the explicit duties set out in Section 704 of the Bankruptcy Code, 11 U.S.C. Section 704, including the duty to maintain records, and the duty to make an accounting").

The Debtor claims that the above cases are distinguishable from the instant case in three ways. In the instant case, says the Debtor, the failure to provide information

stems not from bad faith but rather from a justifiable assertion of the privilege. As noted above, the Court rejects the Debtor's assertion that a § 707(a) dismissal is conditioned on bad faith. The Court also observes that the *Scarfia, Butcher,* and *Connelly* courts assumed the existence of a valid assertion of the privilege and still found that dismissal was a possible remedy.

Second, the Debtor says that *Scarfia, Butcher,* and *Connelly* were voluntary Chapter 7 cases but that this is an involuntary case.[7] Although the Debtor fails to explain the significance of this distinction, presumably she means to say that the bankruptcy court has less right to dismiss the petition of an involuntary petitioner based on the invocation of the privilege because that petitioner is not responsible for his dilemma. However, the Court notes that the theory underlying dismissal without prejudice for lack of adequate information would be equally valid whether or not the petition was voluntary. In either case, the issue is whether the trustee has enough information to administer the estate. The relative blameworthiness of the debtor will not affect the amount of information available to the trustee. For this reason, the Court rejects the involuntary/voluntary distinction as it relates to the instant issue.[8]

Finally, the Debtor asserts that the three above cases were decided in their initial stage while the instant case has been pending almost three years.[9] However, the age of the proceeding is irrelevant to the instant inquiry. Whether a bankruptcy petition is newly filed or languishing, the concern of the bankruptcy court and the trustee for adequate disclosure remains the same.

The Debtor next stresses that the Bankruptcy Code explicitly states that a court cannot deny a debtor a *discharge* on the basis of a valid assertion of the privilege. Section 727(a)(6)(C) provides, in relevant part:

> The court shall grant a debtor a discharge, unless—
>
> \*    \*    \*    \*    \*    \*
>
> (6) the debtor has refused, in the case—
>
> \*    \*    \*    \*    \*    \*
>
> (C) *on a ground other than the properly invoked privilege against self-incrimination,* to respond to a material question approved by the court or to testify.

11 U.S.C. § 727(a)(6)(C) (emphasis added). This proscription applies to a dismissal as well, says the Debtor, because the most significant effect of a dismissal is the loss of a discharge. Thus, claims the Debtor, a bankruptcy dismissal may not be premised on the valid assertion of the privilege against self-incrimination.

The Debtor misapprehends the application of § 727(a)(6)(C) to this case. Section 727(a)(6)(C) generally preserves the discharge right of a debtor who properly asserts the privilege against self-incrimination. In other words, that section provides that a court may not deny a discharge *solely* because a debtor has refused to testify because of his Fifth Amendment privilege. Thus, a court may not use denial of a discharge as a *sanction* for a debtor's refusal to testify because of the privilege.

However, nothing in § 727(a)(6)(C) prevents a court from denying a discharge when a debtor has failed to provide a trustee with enough information to administer the estate—even when that debtor's failure to provide information is occasioned by his reliance on his Fifth Amendment privilege. The focus of § 727(a)(6)(C) is on a debtor's

---

**7.** MNB, however, claims that this is a voluntary Chapter 7 proceeding. The Court need not resolve this factual dispute at this time.

**8.** Moreover, although there may be other motivations not set forth in the record, if this is indeed an involuntary Chapter 7 proceeding, it seems curious to the Court that the Debtor would object to its dismissal.

**9.** MNB counters that the proceeding actually is in the same posture as that of a newly commenced suit because of the Debtor's assertion of her privilege. Again, the Court need not and will not decide this issue.

*refusal to testify,* not on the information available to a trustee. This is subtle but important distinction. Congress clearly did not intend to permit a debtor to gain the benefit of a discharge on the basis of patently inadequate information. If it did, it would, in effect, be approving of the use of the privilege as a sword instead of as a shield. *See Connelly, supra.* Rather, it intended to prevent the situation in which a debtor is punished for the invocation of the privilege.

Further, the Debtor's argument confounds "discharge" and "dismissal." The denial of a discharge would effectively preclude the Debtor from benefiting from bankruptcy protection and obtaining a "fresh start." A dismissal without prejudice under these circumstances, however, would simply postpone the adjudication of the discharge until the Debtor is able to supply the missing information. At this point, the bankruptcy court could once more review the claims in the case with the benefit of the full amount of information needed to administer the estate. As noted by the *Connelly* court:

> If Connelly were denied a discharge under § 727(a)(6), he would thereafter be unable to discharge any debt that was or could have been listed in this case. 11 U.S.C. § 523(a)(9). If his case is dismissed, however, unless this court orders otherwise, that order would not bar the discharge in a later case of debts that were dischargeable in this case. 11 U.S.C. § 349(a). Therefore, it should be permissible for this court to exercise its discretion and impose the lesser sanction of dismissal under circumstances permitting a denial of discharge.

*In re Connelly,* 59 B.R. at 447 (footnote omitted).

## III. WHETHER A COURT IS PROSCRIBED FROM IMPOSING ANY NEGATIVE CONSEQUENCE ON AN INDIVIDUAL WHO HAS VALIDLY INVOKED HIS PRIVILEGE

Perhaps the most persuasive argument against dismissing a case based on a debtor's assertion of the privilege is that it might, in some cases, force that debtor to choose between dismissal and the privilege. A bankruptcy discharge is not a constitutional (nor even a statutory) right and therefore the choice would not be between two constitutional rights. However, the Supreme Court has said that an individual should not be punished for having validly invoked his privilege against self-incrimination. In *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("*Lefkowitz*"), the Court held that the New York state law which terminated a political party officer when he refused to answer questions on the basis of his Fifth Amendment privilege was unconstitutional. The Court said: "Similarly, our cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Id.* 97 S.Ct. at 2135–36. *See also Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973) (Fifth Amendment violated when state canceled architects' contracts with state because of their refusal to testify); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (Fifth Amendment violated when policeman was discharged from the police force for failure to waive privilege in grand jury investigation of police corruption); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (Fifth Amendment violated when statements were coerced under threat of discharge from police force); *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (Fifth Amendment violated when lawyer disbarred as a result of his refusal to testify and to produce documents in connection with a disciplinary proceeding).

In these cases, a state, pursuant to statute, attempted to interrogate an individual about his job performance or contractual relations with the state. To do so, it insisted upon waiver of the Fifth Amendment privilege. When the individual refused to waive the privilege, the state automatically terminated employment or eligibility to contract with the state. The Supreme Court objected to this procedure because it en-

abled the states to circumvent the privilege. Although the claimant was not directly forced to testify, he faced an automatic sanction if he did not testify. Therefore, he had to choose between testifying and losing his job (or some similarly severe sanction). To place a claimant in the position where he must either testify or lose his job, said the Court, is indirectly to compel that claimant to testify. According to the *Spevack* Court:

> The threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege. That threat is indeed as powerful an instrument of compulsion as "the use of legal process to force from the lips of the accused individual the evidence necessary to convict him...."

*Spevack*, 87 S.Ct. at 628 (quoting *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)).

Despite this line of cases, the courts have never held that a Fifth Amendment claimant in a civil proceeding must be shielded from all possible negative consequences that may attend his invocation of the privilege. In fact, civil claimants have been denied certain benefits and exposed to negative consequences as a result of having invoked the privilege. *See Traficant v. Commissioner of IRS*, 884 F.2d 258, 265 (6th Cir.1989) (party may encounter costs imposed in exchange for assertion of privilege as long as they are not so high as to force abandonment of the privilege); *Mid-America's Process Service v. Ellison*, 767 F.2d 684, 686 (10th Cir.1985) (claimant may have to accept bad consequences that flow from assertion of privilege). In a typical case, a court will permit a negative inference to attend the civil litigant's invocation of the privilege or will impose a discovery or evidentiary limitation on the claimant.

In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), a prisoner was charged by correctional officers with inciting a disturbance in the prison and was summoned before the prison disciplinary board. He was told that he might be prosecuted for a violation of state law and that he should consult an attorney. He was also informed that he had the right to remain silent but that if he remained silent, his silence would be held against him. After a hearing, the board decided to place the prisoner in punitive segregation for thirty days and to downgrade his classification. The Supreme Court held that in a civil action, a defendant's silence pursuant to the invocation of his Fifth Amendment privilege may be the basis of a negative inference. *See also Traficant*, 884 F.2d at 265 (tax court prohibited defendant from introducing evidence on matters as to which he had invoked the Fifth Amendment privilege); *SEC v. Cymaticolor*, 106 F.R.D. 545 (S.D.N.Y.1985) (court entered an order compelling the claimant to decide immediately whether to waive his privilege and precluding him from using any information at trial as to which he invoked his privilege).[10] Thus, under *Baxter* and its progeny, a court is permitted to impose a cost on a civil defendant who chooses to remain silent by invoking his Fifth Amendment privilege.

There is, at first glance, a seeming inconsistency in the results reached in the cases decided under *Lefkowitz* and the cases decided under *Baxter*. Under both lines of cases, a governmental entity imposes a "cost"—*e.g.*, loss of job, denial of discovery—because of a claimant's invocation of the privilege. While there may be some difference in the severity of the cost, under either set of cases, the claimant suffers some type of negative consequence as a direct result of his invocation of the privi-

---

**10.** In *United States v. United States Currency*, 626 F.2d 11, 17 (6th Cir.1980), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980), the Sixth Circuit noted that a court could stay a forfeiture proceeding until the criminal prosecution was no longer a threat. 626 F.2d at 17. The imposition of a stay in that context was, in essence, a "cost" imposed on the claimant for having invoked his privilege. In the instant case, the dismissal without prejudice would operate in much the same manner as a stay. The Court makes no determination at this time as to the appropriateness of a stay in the instant case under 11 U.S.C. § 305.

lege.[11] However, in *Lefkowitz*, this cost was deemed impermissible; in *Baxter*, it was deemed acceptable. To be consistent, it would seem as though both *Baxter* and *Lefkowitz* would have to reach the same result—*i.e.*, either permitting or forbidding the imposition of costs in response to the invocation of the Fifth Amendment privilege.

The Supreme Court has attempted to distinguish the cases by noting that under *Lefkowitz*, the refusal to testify alone resulted in a penalty, while under *Baxter*, the refusal to testify was only one of a number of factors considered in assessing the penalty. Justice White, writing for the majority in *Baxter*, said:

> In this respect, this case is very different from the circumstances before the Court in the *Garrity–Lefkowitz* decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege. The advice given inmates by the decisionmakers is merely a realistic reflection of the evidentiary significance of the choice to remain silent.

*Baxter*, 96 S.Ct. at 1557–58. *See also Lefkowitz*, 97 S.Ct. at 2137 n. 5 ("Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted; here, refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions").

However, this distinction does not provide a final answer in the instant case. In fact, under both the *Baxter* and *Lefkowitz* lines of cases, the cost was imposed solely[12] because of the claimant's invocation of the privilege. For example, in *Lefkowitz*, the policeman was dismissed only when he refused to waive the privilege; similarly, in *Baxter*, an inference of guilt attached only when the prisoner refused to waive the privilege. In *Spevack*, the attorney was disbarred solely because he refused to waive the privilege; likewise, in *Traficant*, the claimant was proscribed from introducing certain evidence solely because he refused to waive the privilege. In other words, the causal nexus between the invocation of the privilege and the subsequent sanction is the same in both lines of cases.

There is, however, a more persuasive distinction between the two lines of cases—the motivation behind the imposition of costs. Under the *Lefkowitz* line, the penalty was imposed either to punish the claimant or to compel testimony, or both. Under the *Baxter* line, however, the penalty was imposed either to facilitate the proceeding or to make it more equitable for the non-invoking party. When one party invokes the privilege, he receives a benefit from that invocation in that he need not divulge information which he believes may incriminate him. However, this invocation is not without consequences. The trier of fact and the opposing party are handicapped by the denial of possibly relevant informa-

---

11. Similarly, the Court can see no persuasive distinction in the fact that in one case the state government imposes the cost and in the other a federal court imposes the cost. In both cases, a governmental body is penalizing the invocation of the privilege.

12. The only reason that the imposition of costs in *Baxter* was not automatic was that it was imposed by a disciplinary board instead of by statute. Similarly, in the other cases that follow *Baxter*, the claimant is penalized by an adjudicatory body as opposed to a statute. However, this distinction is ephemeral. If a deliberative body establishes a policy that a certain negative consequence shall be imposed on all claimants of the Fifth Amendment privilege, then, as a practical matter, there would be, as in *Lefkowitz*, an automatic imposition of costs as a result of the invocation of the privilege.

tion.[13] To compensate for this handicap, courts have imposed a cost on the claimant to facilitate the proceeding or to "level the playing field" for the party opposing the claimant.

In *Baxter*, the disciplinary board was denied important information by Mr. Palmigiano's decision not to testify as to the basis for his alleged disciplinary offenses. To counteract this lack of information, the disciplinary board, as part of its decision making process, was permitted to infer guilt from Mr. Palmigiano's silence. Thus, the inference of guilt was used to facilitate a proceeding which had been complicated by Mr. Palmigiano's invocation of his Fifth Amendment privilege.

In *Cymaticolor*, the SEC sought a total preclusion order which would prevent the claimant from offering into evidence any matter as to which he had asserted his privilege. The claimant countered that the order should be limited to evidence that the SEC had not received from other sources. In the interest of maintaining a fair trial, the court rejected the claimant's request and instituted a total preclusion order:

> While the limited preclusion order would eliminate surprise regarding the existence of the evidence, surprise may still occur regarding the defendant's theory and use of the evidence. *Such a limited preclusion order might reduce the trial to a "game of blindman's bluff" and less of "a fair contest with the basic issues and facts disclosed to the fullest practicable extent."*

*Cymaticolor*, 106 F.R.D. at 549 (citation omitted) (emphasis added). *See also Traficant*, 884 F.2d at 264 (stating that claimant would not be permitted to secure an improper advantage in discovery by invoking the privilege). In essence, these courts permitted the claimant to use of the privilege as a shield, but refused to permit him to use it as a sword against his adversary. *See Pervis v. State Farm Fire and Cas. Co.*, 901 F.2d 944, 947 (11th Cir.) (plaintiff may not use privilege as a sword), *cert.*

*denied,* —— U.S. ——, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990).

The core distinction between the two lines of cases, then, is the motivation behind the cost imposed on the claimant. A negative consequence may not be used solely to punish a claimant for having invoked his privilege. It may, however, be used to compensate the non-invoking party or to better administer the proceeding.

The instant case belongs under the *Baxter* line of cases. Here, the Debtor's legitimate assertion of the Fifth Amendment privilege may have deprived the Trustee and the creditors of the ability they would otherwise have under the bankruptcy laws to obtain information relevant to a fair and effective administration of the bankruptcy estate. Therein lies the conflict between the Debtor's constitutional rights and the Trustee's and creditors' statutory rights, and the Court must attempt, to the extent possible, to preserve the Debtor's constitutional rights and yet facilitate the statutory policies of the bankruptcy laws.

The Court believes this can be accomplished in this case by remanding this matter to the bankruptcy court for a determination as to whether the information withheld by the Debtor pursuant to her Fifth Amendment privilege has, in fact, precluded a fair and effective administration of the estate. If it has, on remand, the Debtor's refusal to testify may lead the bankruptcy court to dismiss without prejudice the Debtor's bankruptcy petition. However, such an action would be taken not to punish the Debtor but to balance the invocation of the privilege against the need for adequate disclosure to the Trustee and creditors. Such a result would not only be more fair to the Trustee and creditors, it would also facilitate the proceeding in that when the bankruptcy court eventually ruled on the discharge, it would do so with the benefit of the full mix of available information.

## CONCLUSION

The discreet legal issue addressed in this Opinion is the ability of a bankruptcy

---

**13.** This is especially true in a civil proceeding in which the opposing party does not have the option of granting the claimant immunity in exchange for testimony.

court to dismiss an action for cause when a debtor refuses to provide necessary information on the basis of his validly invoked privilege against self-incrimination. In this case, the bankruptcy court, per Judge Graves, held that it had no power to dismiss an action for cause under these circumstances. For the reasons set forth in this Opinion, the Court rejects that conclusion. Rather, the Court holds that if a debtor's refusal to testify renders a trustee unable to perform the trustee's duties under the Bankruptcy Code, a court may dismiss that case for cause under § 707(a).

The Court will remand this case to the bankruptcy court for a factual determination as to whether the information withheld by the Debtor pursuant to her Fifth Amendment privilege is such as to prevent the Trustee from performing his duties. If so, the bankruptcy court may have the authority, under the Code, to dismiss the action without prejudice under § 707(a).

NOW, THEREFORE;

IT IS HEREBY ORDERED that the bankruptcy court's December 17, 1991 Order Denying Michigan National Bank's Motion to Dismiss be VACATED and REMANDED. The bankruptcy court shall decide MNB's Motion to Dismiss in a manner consistent with the foregoing Opinion.