In re SAVE MORE FOODS, INC., Debtor.

Civ. No. 88–3597.

United States District Court, District of Columbia.

Feb. 10, 1989.
As Amended March 13, 1989.

Eugene M. Propper, Lisa D. Horowitz, Ginsburg, Feldman and Bress, Washington, D.C., for appellant.

Daniel E. Schultz, Sherman, Meehan & Curtin, Washington, D.C., for appellee.

### ORDER

CHARLES R. RICHEY, District Judge.

The Court has before it the parties' appeal of a ruling of the United States Bankruptcy Court for the District of Columbia. The appeal is properly taken pursuant to 28 U.S.C. § 158(a). For the reasons discussed herein, the appeal is denied and the ruling of the Bankruptcy Court is affirmed.

### *Background*

The instant appeal involves the interaction of two related proceedings: a civil action commenced in this Court on July 22, 1987, and a Chapter 7 bankruptcy proceeding subsequently initiated by the defendant in the civil action, Save More Foods ("Save More"), on October 15, 1987.[1] The figure

---

1. The civil action arises out of a contractor-subcontractor relationship between the plaintiff Preferred Meal Systems, Inc. ("Preferred") and Save More. According to Preferred's complaint, Save More contracted to supply food to the District of Columbia for use in the District's schools. Preferred provided the food to Save More, which in turn directly supplied the District. According to Preferred's complaint, however, Save More then refused to reimburse Preferred. The complaint names both Save More

at the heart of the controversy is Save More's President and sole shareholder, Roy Littlejohn.

Littlejohn claims to be, along with several other individuals, the target of a grand jury investigation under way in the District of Columbia. Because of that investigation, this Court stayed a deposition of Littlejohn that had been scheduled in the civil action. The Court's Order, dated November 13, 1987, provided that "the stay regarding the taking of defendant Littlejohn's deposition shall continue for as long as he remains the subject of an ongoing criminal investigation."

On May 12, 1988, as one of Save More's creditors in the bankruptcy proceeding, Preferred moved the bankruptcy court for an order designating Littlejohn a "debtor" within the meaning of Bankruptcy Rule 9001(5).[2] The Bankruptcy Court granted Preferred's motion on June 28, 1988.

The consequence of designating Littlejohn a "debtor" under Rule 9001(5) is to require him, under § 343 of the Bankruptcy Code,[3] to "appear and submit to examination under oath" at a meeting of creditors convened under § 341 of the Bankruptcy Code.[4] The scope of the "examination" authorized under § 343 is articulated in Bankruptcy Rule 2004(b). As pertinent to this Chapter 7 proceeding, Rule 2004(b) provides that

> [t]he examination of any person under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the ad-

ministration of the debtor's estate, or to the debtor's right to a discharge.

Littlejohn now appeals the Bankruptcy Court's decision to designate him a "debtor" for purposes of § 343. More precisely, he objects to the *consequences* of that designation—the requirement that he submit to an "examination" at a meeting of Save More's creditors. To assign him as the "debtor," Littlejohn argues, works a direct and impermissible reversal of this Court's November 13, 1987 Order staying his deposition in the civil action.[5] Such a reversal, he contends, is beyond the power of the Bankruptcy Court. Further, he argues that the "debtor" designation and its attendant examination directly burden his rights under the Fifth Amendment, and that the Bankruptcy Court therefore abused its discretion in granting Preferred's motion. The Court finds neither of Littlejohn's contentions persuasive, and affirms the decision of the Bankruptcy Court.

## DISCUSSION

At the outset, it is clear that the Bankruptcy Court acted properly under the bankruptcy rules. Rule 9001 clearly contemplates that individuals such as Littlejohn, the president and sole shareholder of the bankrupt, will be assigned "debtor" status. Rule 9001(5)(A) expressly states that "any" of a bankrupt corporation's officers or board members may be designated a "debtor." Further, a "controlling stockholder" or "any other person in control" may be a "debtor." Littlejohn is each of these. In all but the exceptional case, a person in Littlejohn's position must be regarded as a "debtor."

and various individual corporate officials of the company as defendants.

2. Bankruptcy Rule 9001(5)(A) defines a "debtor" in the context of a corporate bankruptcy. Under that provision, when "the debtor is a corporation, 'debtor' includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, or any other person in control."

3. 11 U.S.C. § 343 (1986 Supp.).

4. Section 341, 11 U.S.C. § 341 (1986 Supp.), provides that "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors."

5. Not surprisingly, Littlejohn asserts that Preferred's goal in assigning him "debtor" status is not to advance matters in bankruptcy, but is instead to obtain information pertinent to Preferred's allegation of fraud in the civil action. He contends that pursuit of this goal is in direct contravention of the Order of November 13, 1987.

The question, then, is whether this is the exceptional case in which the clear language of Rule 9001 must be ignored. Do the collateral considerations present in this case override the express language of Rule 9001? According to Littlejohn, those collateral considerations are (1) this Court's Order of November 13, 1987 (hereinafter the "Stay Order"), and (2) a concern for Littlejohn's Fifth Amendment rights arising from the pendency of the grand jury investigation. The Court addresses these considerations in turn.

1. *The Court's Order of November 13, 1987.*

On its face, the Stay Order clearly has no bearing on the issue of who might be the proper "debtor" in Save More's bankruptcy proceeding. The Stay Order merely postponed Littlejohn's civil deposition; it did *not*, by its terms, contemplate the intricacies of bankruptcy law. Thus, there is no direct conflict between the Stay Order and the Bankruptcy Court's ruling.

However, the Court understands Littlejohn to argue that the *consequences* of the Bankruptcy Court's ruling, and not its precise terms, work an effective reversal of the Stay Order. Littlejohn complains that the Bankruptcy Court's ruling permits Preferred an "end run" around the Stay Order; Littlejohn contends that the ruling allows Preferred to conduct prohibited civil discovery under the auspices of the Bankruptcy Court and Bankruptcy Rule 2004. Littlejohn therefore suggests that the Court press into service the "law of the case" doctrine as a means of protecting the integrity of the Stay Order. According to Littlejohn, the question of whether Preferred may have civil discovery of him has already been decided in this Court, and the "law of the case" now binds the Bankruptcy Court.

In so arguing, however, Littlejohn misunderstands the *purpose* that the Stay Order was intended to serve. A proper understanding of the Stay Order's purposes, in turn, suggests that it would be improper to apply the "law of the case" doctrine to overrule the Bankruptcy Court's ruling.

The Stay Order was not intended to stall Preferred's prosecution of the civil action. It was not intended to prohibit all discovery in the civil action, even of Littlejohn. Rather, the Stay Order was intended only to serve a narrow, discrete end: to protect Littlejohn's right against the incriminating disclosure of information relevant to the grand jury's investigation. Of course, in doing so, the Stay Order adopted a broader, prophylactic approach. In practical effect, the Stay Order swept, and continues to sweep, more broadly. As a practical matter, the Stay Order *has* effectively stalled the civil action.

However, the Stay Order's narrow *purpose*—as opposed to its broad *effect*—suggests that the alleged "end run" of which Littlejohn complains does not undermine the integrity of the Stay Order. It is of no consequence that Preferred, in the course of a § 343 examination, may extract from Littlejohn information which Preferred may ultimately find useful in the civil action. So long as Preferred is barred from obtaining, in bankruptcy, the constitutionally sensitive information which the Stay Order was *intended* to protect, the integrity of the Stay Order remains intact.

This understanding of the purpose of the Stay Order suggests the error of applying the "law of the case" doctrine here. It is accepted that the doctrine applies only with respect to issues that have been previously decided. *See, e.g., Key v. Wise,* 629 F.2d 1049, 1055 (5th Cir.1980) ("Whether the doctrine applies at all ... depends on whether the question as to which it is asserted was decided previously in the litigation."); *Moore's Federal Practice,* ¶ 0.404[1] n. 15 (2d ed. 1987) ("Only such issues [as] have actually been decided, either explicitly, or by necessary inference from the disposition, constitute law of the case."). Here, this Court did *not* decide that Preferred should have no information from Littlejohn relevant to Preferred's civil action. The Stay Order determined only that Littlejohn should not be forced to disclose, in the context of a civil deposition, information of possible value to the grand jury. Thus, the fact of Preferred's use of

the bankruptcy proceeding to obtain useful information does not, standing alone, do violence to the Stay Order. Under these circumstances, Littlejohn's allegation of an "end run" —as it relates to Preferred's efforts to advance the civil action—is of no consequence. The Stay Order was not intended to keep Preferred in the dark in the civil action, and the "law of the case" doctrine will not be applied to that end.

What remains, of course, is the information that the Stay Order *did* seek to protect. As to this information, Littlejohn is protected, not merely by the Stay Order, but by the Fifth Amendment. The very constitutional concerns which caused this court to issue the Stay Order will permit Littlejohn to raise the Fifth Amendment as a bar to any query in bankruptcy which seeks access to privileged information.

2. *The Bankruptcy Court's Fifth Amendment Balancing.*

■ Littlejohn's second argument is that the Bankruptcy Court abused its discretion by incorrectly balancing (1) the problems for Littlejohn that would arise from the need to choose between testifying fully at the § 343 examination or invoking his Fifth Amendment privilege (with the former creating possible criminal liability and with the latter possibly enhancing the likelihood of civil liability), against (2) the public interest in Littlejohn's testimony. *See Brock v. Tolkow,* 109 F.R.D. 116 (E.D.N.Y.1985).[6]

The Court concludes that, while it might well have reached a different conclusion regarding the necessity of Littlejohn's appearance at the examination than did the Bankruptcy Court, it is unwilling to hold that the Bankruptcy Court's ruling was an abuse of discretion.

The Bankruptcy Court faces a different legal context than this Court faces in the civil action. Rather than a private lawsuit to obtain a money judgment, the Bankruptcy Court is now administering a multiparty process of distribution and compensation, in which several parties—as well as the public at large—have interests. The equities in this context are simply different than in a bipolar civil action seeking a money judgment. As the Bankruptcy Court noted, a debtor in bankruptcy throws himself before the mercy of the Bankruptcy Court and his creditors; under these circumstances, in return for their reduced recovery, the creditors should at least have the right to monitor the debtor's financial status during the bankruptcy. *In re Save More Foods, Inc.,* No. 87–00895, p. 3 (April 13, 1988) (order denying stay pending appeal). Littlejohn himself (as Save More's sole shareholder) intentionally availed himself of the bankruptcy process; this fact alone alters the equities, and favors requiring Littlejohn's appearance.[7] The discomfort to Littlejohn of a choice between full testimony, with possible criminal consequences, and repeated invocations of the Fifth Amendment, with possible civil conse-

---

6. It is worth emphasizing that the choice the Bankruptcy Court faced was *not* between permitting Littlejohn to raise his Fifth Amendment rights and requiring him to testify in violation of those rights. The issue is the wisdom of putting to him the uncomfortable choice between testifying fully and facing possible criminal repercussions, or invoking his Fifth Amendment rights as to privileged matters and risking potential adverse publicity and civil repercussions. *See, e.g., United States v. White,* 589 F.2d 1283, 1286 (5th Cir.1979).

7. Littlejohn points to *Wehling v. Columbia Broadcasting Sys.,* 608 F.2d 1084 (2d Cir.1979), as suggesting that Littlejohn's commencement of the bankruptcy proceedings is irrelevant to the balancing analysis. In *Wehling,* the Second Circuit reversed the District Court's dismissal of the plaintiff's action when the plaintiff refused to answer deposition questions on Fifth Amend-

ment grounds. The Second Circuit found that a stay of the civil action was the appropriate remedy because (1) it would not prejudice the defendants, and (2) it would avoid forcing the plaintiff to choose between his lawsuit and his constitutional right to bring a lawsuit. However, the Court finds the *Wehling* analysis inapplicable to the bankruptcy context because, in *Wehling,* the decision to stay actually allowed the defendants to postpone possible liability. Thus, to some extent, both parties benefited from the stay. In the bankruptcy context, however, a stay serves to postpone the creditors' ability to receive the compensation to which they are entitled. In this sense, the equities surrounding a decision to stay in bankruptcy are vastly different than in *Wehling,* and give the voluntary debtor-creditor distinction (as opposed to the civil plaintiff-defendant distinction) meaning.

quences, are simply more palatable in this context.[8] In this Court's view, the Bankruptcy Court did not abuse its discretion.

Because this Court's Stay Order of November 13, 1987, does not preclude the designation of Littlejohn as the "debtor" under Bankruptcy Rule 9001(5)(A), and because the Bankruptcy Court did not abuse its discretion in concluding that Littlejohn should be required to appear for examination at a meeting of creditors under § 343 of the Bankruptcy Code, the Bankruptcy Court's ruling is affirmed.

---

8. The Bankruptcy Court also made the important point that several events relevant to the bankruptcy proceeding have occurred subsequent to the events underlying both the grand jury proceeding and the civil suit. The existence of these additional matters, and their relevance to the bankruptcy proceeding, favor requiring Littlejohn's appearance.