Michael J. SCARFIA, Debtor/Appellant,

v.

HOLIDAY BANK, Creditor/Appellee.

No. 89–1309–CIV–T–13C.

United States District Court,
M.D. Florida,
Tampa Division.

March 14, 1990.

Leo H. Meirose, St. Petersburg, Fla., Robert Polli, Tampa, Fla., for debtor/appellant.

Roberta A. Colton, Tampa, Fla., for creditor/appellee.

## ORDER

CASTAGNA, District Judge.

The above-styled debtor's "Motion for Leave to Appeal Amended 'Final' Order" of the bankruptcy court is only the most recent of Michael J. Scarfia's four (4) recent attempts to delay the bankruptcy proceedings below by moving the district court for what is actually an interlocutory appeal.[1] Each of the four have raised the same basic issues: whether and to what extent the bankruptcy judge can compel the debtor's response to certain interrogatories and requests for documents propounded by his creditors. The debtor's abuse of the appellate process has thwarted discovery efforts since at least December 15, 1987 on which date he was first served with interrogatories. For the fourth time, Scarfia's motion

---

1. The others were assigned the following case numbers: # 88–1625–CIV–T–13; # 88–1679–CIV–T–13; and # 88–1969–CIV–T–13.

for leave to file an interlocutory appeal is DENIED.

Michael J. Scarfia declared himself and C.M. Systems, the company over which he presided, bankrupt on or about April 25, 1986. He testified freely about his own affairs up until some time after October 13, 1988 when he learned that he had become the subject of a criminal investigation. *See* Motion for Leave to Appeal, at 2–3. Thereafter, he sought to invoke his fifth amendment right against self-incrimination as to all questions and requests propounded. *Id.* at 3.

Meanwhile, on December 15, 1987, January 19, 1988 and May 9, 1988, Scarfia's creditors served him with their first sets of interrogatories, request for admissions and request for documents, respectively. Citing his right to remain silent, Scarfia refused to answer, admit or produce anything. A creditor moved to compel the production of documents; and the bankruptcy judge granted the motion in part— but with the provision that some documents would be submitted *in camera* so that he, the judge, could determine whether their production might tend to incriminate their producer. A hearing was scheduled but, before it took place, Scarfia filed two motions with the district court for leave to file an interlocutory appeal challenging the right of the bankruptcy judge to compel even an *in camera* review of any information Scarfia himself claimed might be self-incriminating. The first motion for leave to appeal was filed on October 17, 1988, and the second on October 26, 1988.

United States District Judge Susan H. Black denied Scarfia's first motion for leave to appeal on March 17, 1989. In addition to finding that Scarfia had not raised a controlling issue of law over which there was substantial dispute and that Scarfia had not shown that an immediate appeal would have materially advanced the litigation's ultimate termination, Judge Black found "patently frivolous" Scarfia's blanket assertion that *any* compelled production, even *in camera,* would necessarily infringe on the debtor's constitutional right against self-incrimination.

United States District Judge George C. Carr denied Scarfia's second motion for leave to appeal on November 18, 1988. Therein, Scarfia maintained that the court stenographer's presence at the *in camera* hearing would violate his fifth amendment right against self-incrimination. Judge Carr found the claim "baseless."

Undaunted, Scarfia filed a third motion for leave to file an interlocutory appeal on December 15, 1989—again referencing his October 17, 1988 Notice of Appeal. The only brief submitted was a copy of the one submitted (and rejected) in the second appeal. Although the Court directed that Scarfia file a new brief in support of his motion for leave to appeal, none was filed. And the motion was denied without opinion on November 30, 1989, again by Judge Carr.

Meanwhile, on August 31, 1989, the bankruptcy judge amended his order compelling certain of Scarfia's answers, admissions and productions. Therein, the judge noted that he had attempted to conduct an *in camera* hearing but that, despite his order and the district court's rejection of Scarfia's appeals, Scarfia refused to provide any information to substantiate his claim (as the law requires him to do) that compliance with the discovery requests of his creditors would tend to incriminate him, and that Scarfia had never produced any of the documents which he had been ordered to produce *in camera. See* Order of the Bankruptcy Court, dated August 31, 1989 at 7–8. 104 B.R. 462. Citing to all of the above and noting that debtor Scarfia had already volunteered 350 pages of testimony "cover[ing] virtually every segment of inquiries requested by [his creditors'] interrogatories, request for admissions and request for production," the bankruptcy judge found that Scarfia had waived his right to remain silent as to those requests and, therefore, ordered him to comply with previous discovery orders within thirty days or risk sanctions, including the finding that he had admitted to all well-plead facts and to all requests for admissions. In his instant motion, Scarfia seeks leave to appeal that order.

■ Once again, Scarfia has not established either a controlling question of law over which there is substantial ground for difference of opinion among courts, nor has he shown that immediate resolution would materially advance the ultimate termination of litigation—both of which are required before this Court will exercise its discretionary power to entertain an interlocutory appeal. *See* 28 U.S.C. § 1292(b) (which governs discretionary appeals to the United States Court of Appeals and is utilized by the district courts to determine whether to grant discretionary appeals from the bankruptcy courts, *see In re Charter, Co.*, 778 F.2d 617, 620 fn. 5 (11th Cir.1985); *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 22 B.R. 500 (N.D.Ga.1982), *aff'd*, 734 F.2d 794 (11th Cir.1984)). His most recent motion does not even attempt to address either prong even though he has been informed of the necessity of both in at least two of his three prior denials. *See* Copies of Orders previously entered (attached), dated November 18, 1988 and March 17, 1989.

■ It is axiomatic that a debtor may not cloak himself with the fifth amendment's protection against self-incrimination simply by a blanket assertion that his answers to interrogatories, requests for admissions and requests for production of documents will tend to incriminate him. *See, Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) (a witness's "say-so does not of itself establish the hazard of incrimination"); *Securities and Exchange Commission v. First Financial Group of Texas*, 659 F.2d 660, 668 (5th Cir.1981); *In re Arend*, 286 F. 516 (2d Cir.1922); *In re Mudd*, 95 B.R. 426, 430 (Bkrtcy.N.D.Tex.1989); *In re Hulon*, 92 B.R. 670, 675 (Bkrtcy.N.D.Tex.1988); *In re Krisle*, 54 B.R. 330, 338 (Bkrtcy. D.S.D.1985) (a debtor "may not decline to disclose information on the basis of a naked assertion that the information requested may tend to incriminate him"); *In re Connelly*, 59 B.R. 421, 433, 444 (Bkrtcy.N.D.Ill.

1986) ("Debtor 'is not exonerated from answering merely because he declares in doing so he would incriminate himself'.... [citing *Hoffman* ]"); *In re Crabtree*, 39 B.R. 702 (Bkrtcy.E.D.Tenn.1984); *In re Candor Diamond Corp.*, 21 B.R. 147, 152 (Bkrtcy.S.D.N.Y.1982); and *In re John Lakis, Inc.*, 228 F.Supp. 918 (S.D.N.Y.1964).

It is for the court to decide whether an invocation of the fifth amendment is justified and, if so, to what extent. *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818; *In re Krisle*, 54 B.R. at 339; and *In re Crabtree*, 39 B.R. at 712. *See also, Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968); and 2 *Collier on Bankruptcy*, § 344.03 (15th ed. 1983). Therefore, "it is incumbent upon the court to [inquire] into the legitimacy and scope" of a party's assertion of the privilege. *In re Connelly*, 59 B.R. at 444, citing *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir.1980).[2] As pronounced in *In re Hulon*, 92 B.R. at 675:

> The court will consider whether the debtor may invoke the privilege after conducting a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore whether or not the privilege is well founded.

If it is not, the court can compel his testimony. *See In re Connelly*, 59 B.R. at 432–33, citing *Hoffman*. In order to properly invoke the privilege, therefore, a debtor must produce, for the court, credible reasons why his answers would incriminate him. *Id.* at 434–35. *In re Einhorn*, 33 B.R. 665, 667 (Bkrtcy.E.D.N.Y.1983), *citing United States v. Zappola*, 646 F.2d 48, 53 (2d Cir.1981); *In re Mudd*, 95 B.R. at 431; and *In re Connelly*, 59 B.R. at 432, citing *In re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983), citing *Hoffman* (before court could consider, much less sustain, debtor's assertion of the fifth amendment, debtor had to come forward with minimal credible reasons for why each of the many disclo-

**2.** *See also, Matter of W.F. Breuss, Inc.*, 586 F.2d 983 (3d Cir.1978) (approving court stenographer's attendance at a court ordered hearing to determine the propriety of witness's invocation of the fifth amendment).

sures sought might incriminate him). Scarfia's blatant, blanket refusal to do so in the instant cause precluded him from even *invoking* the fifth amendment properly. *See In re Einhorn,* 33 B.R. at 667. Therefore, he can hardly claim that the bankruptcy court wrongly found it waived.

■ Even so, there were adequate grounds on which the bankruptcy court could have found the right waived: "[a] witness who testifies to certain transactions can be compelled to testify further because the '[d]isclosure of a fact waives the privilege as to [its] details.'" *In re Candor,* 21 B.R. at 151, citing *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344, *reh. denied,* 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951). As the court said in *In re Mudd:*

> "To allow the Debtor to plead a blanket Fifth Amendment privilege [after volunteering information] and refuse to answer any further questions on the subjects covered in his earlier testimony would allow the Debtor to prematurely close the door which he freely opened. The law, however, does not permit a witness to open the door just wide enough to offer the Court an impaired view of the facts. Once the witness voluntarily opens the door, the Court may open it completely, and scrutinize every exposed matter."

*In re Mudd,* 95 B.R. at 430, citing *Rogers* and *Klein v. Harris,* 667 F.2d 274 (2d Cir. 1981). The bankruptcy judge found that none of the information Scarfia's creditors sought to compel extended beyond what Scarfia had already volunteered. And Scarfia offered nothing to rebut that finding.

■ While a debtor is entitled to invoke his fifth amendment right to refuse responses in a bankruptcy proceeding, *In re Hulon,* 92 B.R. at 673, a discharge in bankruptcy is neither an inherent nor a constitutional right. *In re McDonald,* 25 B.R. 186, 189 (Bkrtcy.N.D.Oh.1982); *In re*

*Save More Foods, Inc.,* 96 B.R. 1 (D.D.C.1989); and *In re Connelly,* 59 B.R. at 448. The bankruptcy court can dismiss, *sua sponte,* a petition that cannot be administered due to a debtor's refusal to provide information.[3] *Id.* at 447–48. Requiring him to choose between the benefits of discharge and the costs of self-incrimination does not necessitate forfeiture of one constitutional right to secure another since only the latter stems from the Constitution. *Id.* at 448. A debtor seeking relief from his obligations pursuant to the Bankruptcy Code and in a Bankruptcy Court does so willingly and voluntarily and is not entitled to as much consideration in being compelled to testify as would be another witness who had no interest in the proceeding. *See In re Larkham,* 24 B.R. 70, 72 (Bkrtcy. D.Vt.1982).

■ Since it is indisputable that Scarfia came forth with no evidence to justify his purported invocation of the fifth amendment, and since it is indisputable that a proper invocation would have required him to do so, there can be no debate over the bankruptcy court's finding that the privilege was not asserted and therefore waived. By law, Scarfia waived the privilege as to the details of facts volunteered prior to his assumption of silence. *In re Candor,* 21 B.R. at 151, *et al.* His failure to offer any evidence to show that his creditors were thereafter seeking more than just "details" precludes him from challenging the finding that they were not. And his failure to come forth with any evidence to show that his responses to those details might further incriminate him precluded the bankruptcy court from finding that such responses would be incriminating since there is no allegation that the requests, on their face, seek incriminating information.

Moreover, the scope of Scarfia's waiver necessarily extends to each of the interrogatories and requests submitted since his failure to properly invoke the privilege was equally evident as to each.

---

**3.** Since the bankruptcy judge is in the best position to decide whether the creditors would be unduly disadvantaged by the debtor's refusal to

testify, "we should be reluctant to challenge his conclusions." *In re Jones,* 490 F.2d 452, 456 (5th Cir.1974).

In light of the above, Scarfia has failed to establish that the question he seeks to raise via an interlocutory appeal provides a substantial ground for a difference of opinion among courts and he has failed to show how an appeal would materially advance resolution of this litigation since this Court could not assess the bankruptcy court's ruling for error in light of Scarfia's refusal to provide that court with any facts on which to rule.

Accordingly, his Motion for Leave to File an Appeal is hereby DENIED.

DONE AND ORDERED.