In re Michael J. SCARFIA, Debtor.

Michael J. SCARFIA, Appellant,

v.

TRAVELERS INDEMNITY COMPANY, Appellee.

No. 94–148–CIV–T–17.
Bankruptcy No. 86–1642–BKC–8B7.

United States District Court,
M.D. Florida,
Tampa Division.

March 2, 1995.

Leo H. Meirose, Jr., Law Office of Leo H. Meirose, Jr., Robert Paul Polli, Tampa, FL, for appellant Michael J. Scarfia, Jr.

Anthony J. Abate, Mark David Hildreth, Abel, Band, Russell, Collier, Pitchford & Gordon, Chartered, Daryl James Brown, Brown, Clark & Walters, P.A., Sarasota, FL, for appellee Travelers Indem.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the Amended Final Judgment of Default entered on December 2, 1993, by United States Bankruptcy Judge Thomas E. Baynes, Jr. Jurisdiction over appeals from the final judgments, orders, and decrees of the Bankruptcy Court is vested in the Federal District courts. 28 U.S.C. § 158(a).

### STANDARD OF APPELLATE REVIEW

Findings of fact by the Bankruptcy Court will not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *In re Downtown Properties, Ltd.,* 794 F.2d 647 (11th Cir.

1986). However, Appellant is entitled to an independent, *de novo* review of all conclusions of law and the legal significance accorded to the facts. *In re Owen,* 86 B.R. 691 (M.D.Fla.1988).

### FACTS

Michael J. Scarfia, Appellant, declared himself and C.M. Systems, the company over which he presided, bankrupt on or about April 25, 1986. In October 1986, Appellant voluntarily converted his Chapter 11 case to a Chapter 7 case. In the pending adversary proceeding, Appellant testified freely about his own affairs up until sometime after October 13, 1986, when he learned that he had become the subject of a criminal investigation. Thereafter, he sought to invoke his Fifth Amendment right against self-incrimination as to all questions and requests propounded in regard to the pending bankruptcy case.

On March 11, 1987, Travelers Indemnity Company, Appellee, filed its Second Amended Complaint Objecting to Dischargeability of Debt in the adversary proceeding. In its complaint, Appellee sought damages from Appellant for: (1) fraud allegedly committed by him in connection with the issuance of surety bonds to C.M. Systems and (2) a determination of the non-dischargeability of the debts incurred to Appellee. Appellee was the issuer of construction bonds, as surety, for C.M. Systems, which was a Florida corporation in the general contracting business. Appellee issued bonds between November 1983 and December 1986 at the request of various agents of C.M. Systems, including Appellant who was president and a shareholder of C.M. Systems.

On May 1, 1987, Appellant filed his Answer and Affirmative Defenses to Appellee's Second Amended Complaint. On July 13, 1987, Appellee attempted to take Appellant's discovery deposition. Appellant refused to answer any questions by invoking his Fifth Amendment privilege. Thereafter, Appellee sought the entry of an order compelling Appellant to answer Appellee's deposition questions. On March 23, 1988, the Bankruptcy Court entered an order on Appellee's motion

to compel. The court directed Appellant to file *in camera* his sworn affidavit stating separately for each of Appellee's questions why responding to the question would cause him to apprehend danger of self-incrimination.

Appellant filed the affidavit *in camera* with the court and the court held an *in camera* hearing on August 25, 1988, to consider Appellant's affidavit and to consider his testimony with regard to Appellee's questions at the July 1987 deposition. The court entered an order on September 20, 1988, continuing the *in camera* hearing and specifying that Appellee's counsel was not allowed to be present at the *in camera* hearing because of the Fifth Amendment issues.

On October 6, 1988, the Bankruptcy Court entered an additional order scheduling an *in camera* hearing on Appellee's motion to compel. That order ultimately became the subject of an interlocutory appeal to the District Court on the issue of whether a court reporter should be present at the *in camera* hearing. The District Court denied Appellant's appeal on November 30, 1989. The Bankruptcy Court then entered an order to show cause requiring Appellant to show why the court should not enter an order compelling Appellant to comply with Appellee's discovery demands regarding Appellant's deposition.

Following a hearing on April 19, 1990, the Bankruptcy Court ruled that there would be no *in camera* hearing as the District Court had already ruled in *Scarfia v. Holiday Bank*, 129 B.R. 671 (M.D.Fla.1990), that Appellant had waived his Fifth Amendment privilege. Shortly thereafter, on May 17, 1990, the Bankruptcy Court entered its order discharging the Order to Show Cause and granting Appellee's October 1987 Motion to Compel.

On May 25, 1990, Appellant sought leave to appeal the Bankruptcy Court's Order Discharging the Order to Show Cause. Appellant asserted that he had not waived his Fifth Amendment privilege and was entitled to an *in camera* hearing on the Fifth Amendment issue. The District Court denied the filing of an interlocutory appeal, on the grounds that it would not advance the litiga-tion and that it would not establish a controlling question of law. On June 26, 1990, Appellee deposed Appellant who again refused to answer all questions on Fifth Amendment grounds. Thereafter, on July 23, 1990, Appellee moved for the entry of sanctions and a default judgment as a result of Appellant's failure to respond to the deposition questions.

On September 25, 1991, the Bankruptcy Court heard Appellee's motion for sanctions. The court denied the motion for sanctions, directed the rescheduling of Appellant's deposition, and advised Appellant that if he continued to assert the Fifth Amendment privilege the court would enter a final judgment of default upon the filing of the appropriate motion by Appellee. On October 18, 1991, Appellee deposed Appellant who again refused to answer any questions on the basis of the Fifth Amendment privilege. Thereafter, on November 18, 1991, Appellee filed its Motion for Entry of Final Judgment of Default in response to Appellant's refusal to answer any questions.

On March 9, 1992, the Bankruptcy Court entered an order granting a Final Judgment of Default in favor of Appellee. The court struck Appellant's pleadings, determined that Appellant's obligation to Appellee is non-dischargeable, and required Appellee to file an affidavit as to damages. Appellant appealed the Bankruptcy Court's Final Judgment of Default. The District Court affirmed the Bankruptcy Court's decision and the matter is currently on appeal to the Eleventh Circuit Court of Appeals.

On or about April 13, 1992, Appellee submitted the Affidavit of one Scott D. Stewart setting forth the Appellee's losses at $3,757,-944.00 with additional outstanding claims in excess of $5,000,000.00. On April 21, 1992, Appellant filed an objection to the Affidavit and Entry of Final Judgment. On December 21, 1992, the Bankruptcy Court entered an order sustaining Appellant's objections without prejudice and allowing Appellee to file a supplemental affidavit. Thereafter, Appellee filed its Supplemental Affidavit in Support of Final Judgment of Default, its Affidavit of Attorneys' Fees and Other Dis-

bursements, and its Affidavit as to the Non–Military Status of Appellant.

On March 31, 1993, the Bankruptcy Court entered its Order Amending Final Judgment of Default. The court reiterated the earlier finding that Appellee's claim is non-dischargeable pursuant to 11 U.S.C. § 523. The court further determined that Appellee's non-dischargeable claim against Appellant is $6,271,411.87. On April 9, 1993, Appellant filed his Notice of Appeal of the Bankruptcy Court's Order Amending Final Judgment of Default. The District Court affirmed the Bankruptcy Court's decision to strike Appellant's pleadings and enter default judgment. The District Court set aside the damage determination and remanded for an evidentiary hearing. Appellant appealed the affirmed decision to the Eleventh Circuit.

On the same day that Appellant filed his notice of appeal of the Bankruptcy Court's Order Amending Final Judgment of Default, Appellee filed a motion seeking modification of the order. Appellee wanted the court to include language directing that a separate judgment be entered as is required by Federal Rule of Bankruptcy Procedure 9021 and to include the language "for which let execution issue." Appellee, in requesting the inclusion of this language, argued that because of the somewhat unclear requirements of Florida law, such language is necessary in order for execution to issue upon a judgment and because Federal Rule of Bankruptcy Procedure 7069 incorporates state practice and procedure with regard to execution on judgments. On May 19, 1993, the Bankruptcy Court denied Appellee's Motion to Modify the Order Amending Final Judgment of Default. On June 2, 1993, Appellee filed its Notice of Appeal to this Court of the May 19, 1993 Order. This Court amended the language of the judgment entered, allowing execution to issue against Appellant. On March 11, 1994, Appellant filed its Notice of Appeal of that decision to the Eleventh Circuit Court of Appeals.

On December 2, 1993, the Bankruptcy Court entered its Amended Final Judgment of Default in which the court awarded judgment to Appellee in the amount of $6,271,-411.87. It is from this order that this appeal is taken.

### DISCUSSION

Appellant raises five issues on appeal: (1) The Bankruptcy Court was without jurisdiction to reconsider its own Order after the filing of a Notice of Appeal to District Court of that Order; (2) the Bankruptcy Court erred by imposing the sanction of striking Appellant's pleadings and entering a default judgment; (3) the fifth amendment was properly invoked and there has been no waiver; (4) the Bankruptcy Court erred in denying Appellant an *in camera* hearing in this case; and (5) Appellee was not entitled to a determination of the amount of the non-dischargeable claim on the basis of the evidence submitted, and the procedure followed by the Bankruptcy Court.

Although Appellant has raised these five issues on appeal, he freely admits that this Court has already rendered decisions in this case regarding issues (2) through (5). *See* Appellant's Initial Brief at 1. In Appeal Number 92–718–CIV–T–23A, this court affirmed the Bankruptcy Court's March 9, 1992, entry of a Final Judgment of Default. Appellant has appealed that ruling to the Eleventh Circuit Court of Appeals. In Appeal Number 93–939–CIV–T–17B, this Court affirmed the Bankruptcy Court's decision to strike Appellant's pleadings and enter default judgment and Appellant has taken an appeal of that ruling to the Eleventh Circuit as well. In the same appeal, this Court reversed the Bankruptcy Court's March 31, 1993, damage determination and remanded the case to the Bankruptcy Court for an evidentiary hearing on damages.

Finally, in Appeal Number 93–1208–CIV–T–23A, this court amended the language of the judgment entered by the Bankruptcy Court, allowing execution to enter against Appellant. On March 11, 1994, Appellant filed its Notice of Appeal of that ruling to the Eleventh Circuit. Therefore, the only issue properly before this Court, and the only issue this Court will consider in this Appeal, is whether the Bankruptcy Court was acting within its jurisdiction when it entered the December 2, 1993, Amended Final Judgment

of Default. The Court finds that the Bankruptcy Court was not acting without jurisdiction and that the whole issue is essentially moot at this point anyway.

## A. Bankruptcy Court Did Not Act Without Jurisdiction

■ Appellant submits that the Bankruptcy Court's jurisdiction ceased when Appellant filed his Notice of Appeal of the March 31, 1993, Order Amending Final Judgment of Default. *See In the Matter of Urban Dev., Ltd.,* 42 B.R. 741 (Bkrtcy.M.D.Fla.1984) (holding that a lower court should not take any action, once appeal is filed, which would interfere with the appeal process or with the appellate court's jurisdiction). Therefore, Appellant argues, the Bankruptcy Court did not have jurisdiction to entertain Appellee's Motion to Modify the Order Amending Final Judgment of Default and to subsequently enter its December 2, 1993, Amended Final Judgment of Default. Appellant argues that the Amended Final Judgment of Default amounted to a reconsideration of the Order Amending Final Judgment of Default. Appellant bases this argument on the fact that the Amended Final Judgment includes the language, "for which let execution issue", that Appellee sought to include through its Motion to Modify. Thus, Appellant argues, the court acted without jurisdiction and essentially *ipso facto* amended the Order to include the language requested by Appellee.

Appellee argues that the Bankruptcy Court, in entering the December 2, 1993, Amended Final Judgment of Default, was simply complying with Federal Rule of Bankruptcy Procedure 9021 which requires the entry of a separate judgment. Appellee points out that after the Bankruptcy Court entered its order denying Appellee's Motion to Modify the March 31, 1993, Order Amending Final Judgment of Default, the Clerk's office subsequently advised Appellee's counsel that Appellee needed to submit an amended final default judgment incorporating the terms of the court's March 31, 1993, Order for purposes of complying with the separate judgment requirement of Rule 9021. *See* Appellee's Answer Brief at 8. Accordingly, Appellee submitted such a judgment

and it was entered by the court on December 2, 1993.

This Court finds Appellee's argument to be more persuasive than Appellant's. Appellant seems to forget that the Bankruptcy Court denied Appellee's Motion to Modify the March 31, 1993, Order Amending Final Judgment of Default. Because the court denied the motion to modify the March 31, 1993 *Order,* this Court must assume that the Bankruptcy Court, in entering the December 2, 1993, Amended Final *Judgment* of Default, was simply complying with the Rule 9021 requirement of a separate judgment. Furthermore, this same distinction between the "Order" and "Judgment" may serve to explain the presence of the "execution issue" language in the Amended Final Judgment. It is logical that this language would not be included in the *Order,* but would be included in the final *judgment* when Appellee would be in a position to execute upon or otherwise enforce its rights.

## B. Issue is Moot at this Time

■ This leads us to the Court's second point that the issue, at this time, is essentially moot. The whole issue of whether the Bankruptcy Court was acting without Jurisdiction in entering the Amended Final Judgment of Default hinges on the inclusion of the "execution issue" language that was included in the Amended Final Judgment of Default. The purpose of such language was to enable Appellee to enforce the judgment. However, at this time, Appellee is not in a position to execute upon or otherwise enforce its rights under the judgment because this Court, in Appeal Number 93–939–CIV–T–17B, set aside the Bankruptcy Court's damage determination and remanded the case for an evidentiary hearing on damages. Such hearing has yet to take place and until is does this issue is essentially moot. *See Mills v. Green,* 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895) (holding that an appeal is properly dismissed as moot when an appellate court lacks power to provide an effective remedy for the appellant should it find in his favor).

### *CONCLUSION*

This Court has carefully reviewed the circumstances surrounding the Bankruptcy

Court's entry of the December 2, 1993 Amended Final Judgment of Default, and finds that the bankruptcy court was not acting without jurisdiction and that the issue is essentially moot at this time as there is no damage determination on which to execute. Accordingly, it is

ORDERED that the Bankruptcy Court's Amended Final Judgment of Default be affirmed and the Clerk of the Court be **directed** to enter judgment for the Appellee.

**DONE AND ORDERED.**