**In re Roger William WINCEK, Jr., Debtor.**

**Bankruptcy No. 95–5818–8G3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 8, 1996.

Roger William Wincek, Oldsmar, FL, pro se.

Terry E. Smith, Trustee, Bradenton, FL.

Eric Barksdale, Bradenton, FL.

## ORDER ON MOTIONS TO DISMISS

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Motion to Dismiss filed by the United States of America (the United States), and also the Motion to Dismiss filed by Terry E. Smith, the standing Chapter 13 Trustee (the Trustee). The United States asserts that Roger William Wincek, Jr. (the Debtor) filed this Chapter 13 case merely to hinder the United States in its efforts to collect taxes owed by the Debtor, that the Debtor has filed two previous bankruptcy cases with no genuine attempt to pay his debts, and that the present case was filed in bad faith. The Trustee asserts that the Debtor has refused to disclose any information regarding his income, either on his bankruptcy schedules or at his meeting of creditors. Consequently, the Trustee contends that he cannot determine whether the Debtor is applying all of his disposable income to the Chapter 13 Plan as required by § 1325(b) of the Bankruptcy Code. The United States and the Trustee both seek the dismissal of this Chapter 13 case.

The Debtor filed his petition under Chapter 13 of the Bankruptcy Code on June 14, 1995. The Debtor initially filed the case jointly with his wife, Heidi Joyce Wincek. An order was entered on August 14, 1995, however, which dismissed the Chapter 13 case as to Heidi Wincek pursuant to her request for dismissal under § 1307(b) of the Bankruptcy Code.

The Debtor filed his Statement of Financial Affairs and Schedule of Assets and Liabilities on August 4, 1995. With respect to Question Number 1 on his Statement of Affairs concerning the amount of income received from his employment or business, the Debtor responded:

> I respectfully decline to answer that question on the grounds that my response may tend to incriminate me and I hereby invoke all my rights, privileges, and protection under the 5th Amendment to the Constitution of the United States of America; while at all times reserving all my other rights, privileges, and protections under all sources of law whether or not known to me at this time.

The Debtor's response to every other question on the Statement of Affairs, other than the question regarding his prior addresses, was "none." Question Number 2, for example, requests that the Debtor state the amount of income that he has received "other than from employment, trade, profession, or operation of the debtor's business," and the Debtor responded that he has received "none."

On his schedules of assets, the Debtor stated that he owned no real property, and that the value of his personal property totaled $975. The personal property consists only of a 1982 Chevrolet station wagon, minimal household furnishings and wearing apparel, $200 in cash, and $250 in security deposits held by utility companies. All of the personal property is claimed as exempt on Schedule C. The Debtor listed a "residence lease" on his statement of executory contracts.

On his schedules of liabilities, the Debtor stated that he has no secured creditors and no creditors holding unsecured priority claims. The Debtor included six entries on his "Schedule F—Creditors Holding Unsecured Nonpriority Claims." Four of these entries identify the Internal Revenue Service as the creditor, with claims relating to four separate years for a total of $10,162.10. The fifth entry identifies the United States Department of Justice as the creditor holding a claim in the amount of $400, and the sixth entry identifies the Professional Career Development Institute as the creditor holding a claim in the amount of $551.66. The total amount of the claims scheduled by the Debtor, therefore, equals $11,113.76.

The Debtor also filed a Statement of Current Income and Expenses. The Schedule of Current Income requests information regarding the Debtor's occupation, employment, gross income, and monthly take home pay. On this Statement of Income, the Debtor's sole response again was:

> I respectfully decline to answer these questions on the grounds that my response might tend to incriminate me and I hereby invoke all my rights, privileges, and protection under the 5th Amendment to the Constitution of the United States of America; while at all times reserving all my other rights, privileges, and protections under all sources of law whether or not known to me at this time.

The Debtor scheduled current expenditures in the amount of $1,250 per month, which consists of rent, utilities, food, clothing, and medical expenses.

On August 14, 1995, the Debtor filed a partial amendment to his Statement of Affairs and Schedules. Four primary additions or revisions appear on these amendments. First, Heidi Wincek is named as a codebtor with respect to the claims scheduled for the Internal Revenue Service and the Department of Justice. Second, the Debtor's current expenditures were increased to $1,310 per month. Third, the Debtor invoked his constitutional rights and privileges in connection with the questions regarding income "other than from employment or operation of a business" and the "nature, location, and name of business." Finally, the Debtor disclosed a lawsuit styled "Wincek v. Hart" pending in the United States Court of Appeals for the Eleventh Circuit.

The Debtor filed a Chapter 13 Plan on August 4, 1995. The Plan proposes to pay the Trustee the sum of $61.73 per month for a period of 36 months, for a total of $2,222 during the three year life of the plan. According to the Debtor's calculation, creditors would receive 20% of the amount of their

claims under this plan, after deduction of the Trustee's fees.

The Debtor appeared at a meeting of creditors conducted by the Trustee on August 22, 1995. At that meeting, the Debtor again invoked his Fifth Amendment rights and privileges and declined to answer any questions concerning the source or amount of his income. On August 29, 1995, the Debtor wrote a letter to the Trustee and offered to answer the Trustee's questions at a rescheduled meeting, on the condition that the Trustee first obtain an order from the United States District Court compelling the Debtor to testify and granting him immunity.

The United States contends that the Chapter 13 case was not filed in good faith and simply represents a tactic to preclude the United States from collecting the taxes owed by the Debtor. The United States contends that the Debtor previously filed a Chapter 7 case in 1992 and a Chapter 13 case in 1993, and that the Debtor did not file this case in a good faith effort to repay his debts.

The Trustee contends that the provisions of Chapter 13 require full disclosure of a debtor's income and financial affairs, and that the Trustee cannot determine whether the Debtor's plan complies with the requirements of Section 1325 of the Bankruptcy Code, including the "disposable income" requirement, without the Debtor's cooperation. Absent full disclosure, the Trustee asserts that the case should be dismissed.

In response, the Debtor asserts that he has a clear right to invoke his privilege against self-incrimination, and that he should not be compelled to relinquish that constitutional right in order to exercise his "statutory right" to adjust his debts in a Chapter 13 case. The Debtor further asserts that the Trustee should consider seeking an order of immunity.

### Discussion

This case involves an individual's constitutional right to decline to make any statements that may tend to incriminate him, and that individual's statutory duty to disclose certain financial information in connection with a bankruptcy case which he voluntarily commenced.

... The [Fifth Amendment] privilege [against compulsory self-incrimination] reflects a complex of our fundamental values and aspirations, (footnote omitted) and marks an important advance in the development of our liberty. (footnote omitted) It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; (footnote omitted) and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. (footnote omitted) This Court has been zealous to safeguard the values which underlie the privilege. (footnote omitted).

*Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).

Courts agree that the protection granted by the Fifth Amendment extends to Bankruptcy cases. *In re McCormick,* 49 F.3d 1524, 1526 (11th Cir.1995); *Scarfia v. Holiday Bank,* 129 B.R. 671, 675 (M.D.Fla.1990).

When a dispute arises involving a Debtor's invocation of his privilege against self-incrimination in a bankruptcy case, the first inquiry generally made by courts is whether the Fifth Amendment was properly asserted as a threshold matter. A debtor's mere statement that the requested information may tend to incriminate him is not sufficient to entitle him to invoke the Fifth Amendment. *Scarfia,* 129 B.R. at 674. The debtor must present credible reasons why responding to the questions would pose a real threat of incrimination. *In re Connelly,* 59 B.R. 421, 434–35 (Bankr.N.D.Ill.1986). The debtor "must have reasonable cause to apprehend danger of self-incrimination from direct answers to the specific questions posed." *Id.* at 434. See also *Scarfia,* 129 B.R. at 674 ("In order to properly invoke the privilege, therefore, a debtor must produce, for the court, credible reasons why his answers would incriminate him.") The debtor is not required to establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege that he seeks to assert. *Connelly,* 59 B.R. at 434. He must, however, substantiate

his claim that responding to the specific requests for information may tend to incriminate him. *Scarfia,* 129 B.R. at 673.

■ This requirement recognizes the peculiar impact in bankruptcy cases of invoking the Fifth Amendment. "[F]ull disclosure of all relevant information has always been an important policy of the bankruptcy laws." *Connelly,* 59 B.R. at 430, quoting A. Kurland, *Debtors' Prism: Immunity for Bankrupts under the Bankruptcy Reform Act of 1978,* 55 Am.Bankr.L.J. 177, 179 (Part I, Spring 1981). If a debtor refuses to answer questions on the basis of his Fifth Amendment rights, "the bankruptcy court's ability to effect a thorough and equitable adjudication is jeopardized." *Id.*

■ In this case, the Debtor has not sufficiently justified his assertion of the privilege against self-incrimination. His statements on the schedules consist of the mere assertion that "my response may tend to incriminate me." Further, in the Debtor's Response to the Standing Trustee's Motion to Dismiss and Memorandum of Law in Support Thereof, the Debtor states only his conclusion that he "has a reasonable fear that any disclosure(s) he makes about his source(s) and/or amount(s) of 'income' could be used as evidence against him in a criminal proceeding or could lead to evidence that could be so used." This is the totality of the Debtor's explanation regarding his invocation of the Fifth Amendment. There is no evidence that the Debtor is under indictment, under arrest, or even under investigation. The Debtor has not provided any basis for his belief that the responses may tend to incriminate him, and has not demonstrated that the danger of incrimination is anything more than speculation. The Debtor has not shown credible reasons why his answers to the questions on his schedules would incriminate him.

The movants are not directly challenging the Debtor's right to or use of the privilege, however.[1] The Trustee asserts that, in view of the use of the privilege as invoked by the Debtor in this case, the Trustee cannot ad-

minister the case and therefore the case should be dismissed. The United States also requests that the case be dismissed. Accordingly, the Court must evaluate the circumstances as they exist and determine if the relief requested is appropriate. All factors must be considered.

■ The first factor to be considered is whether the blanket assertion of the Fifth Amendment privilege with respect to all income of the Debtor in a Chapter 13 case "impede[s] the basic bankruptcy administration of his case." *McCormick,* 49 F.3d at 1527. At least two cases have discussed this test. In *McCormick, supra,* a Chapter 11 debtor had invoked the Fifth Amendment in a dischargeability proceeding. A creditor subsequently raised the assertion of the privilege as a basis for objecting to confirmation of the debtor's plan of reorganization. The bankruptcy court concluded that the debtor's refusal to testify was contrary to the purposes and policies of the Bankruptcy Code and evidenced the debtor's bad faith in proposing his plan, and denied confirmation. The Eleventh Circuit, however, ruled that the finding of bad faith could not be supported solely by the debtor's refusal to testify. According to the Eleventh Circuit, such refusal could constitute grounds for denying confirmation only if it impeded the administration of the Chapter 11 plan. "As long as McCormick's failure to testify at the First Interstate deposition did not impede the basic bankruptcy administration of his case, however, assertion of his Fifth Amendment privilege alone cannot be the basis for denying confirmation of his plan." *Id.* at 1527. In the Chapter 11 case, the Eleventh Circuit was not convinced that the administration of the entire bankruptcy case was subverted by the debtor's refusal to testify in one discrete dischargeability proceeding within the Chapter 11 case. The Eleventh Circuit remanded the case, but left open the possibility that the debtor's refusal may have "impeded the administration of the Chapter 11 plan in a way not disclosed by the record." *Id.*

---

1. Likewise, whether or not the privilege has been waived is also not before the Court, but the Court notes that in his Chapter 7 case filed on September 14, 1992, and in his Chapter 13 case filed on November 19, 1993, the Debtor answered questions which he now declines to answer.

In *Connelly,* on the other hand, a Chapter 7 debtor refused to provide any information whatsoever regarding his Chapter 7 case, and instead invoked his Fifth Amendment privilege. The only three items of information furnished by the debtor in his bankruptcy case were his name, address, and social security number. *Connelly,* 59 B.R. at 425. The court concluded that this blanket assertion of the privilege was impermissible in the Chapter 7 case:

> He [the debtor] has thereby deprived the trustee of information needed to administer this case, and hindered other parties in interest in the prosecution of any claims they might have against the debtor. Such conduct, if tolerated by the courts, has onerous and ominous implications for trustees, creditors and other parties with an interest in a bankruptcy case. The system of bankruptcy cannot function in the face of such a total blanket assertion as to information, documents, and property.
>
> .    .    .    .    .
>
> [W]hile the court must always protect use of the Fifth Amendment as a shield to protect a debtor's rights, a debtor cannot use that privilege as a sword to maintain his case to discharge in Chapter 7 without any disgorgement of his assets or disclosure of information.

*Connelly,* 59 B.R. at 450–51. Clearly, the debtor's refusal to disclose any information concerning his assets and liabilities impeded the administration of his Chapter 7 case, since the liquidation of nonexempt assets and distribution of the proceeds to creditors is the very essence of a Chapter 7 case.

The scope of the Debtor's invocation of the Fifth Amendment in this case falls somewhere between the situation presented in *McCormick,* in which the privilege was asserted in a discrete proceeding within a Chapter 11 case, and the blanket assertion of the privilege presented in *Connelly.* In this case, the Debtor furnished certain information, but withheld other information that relates specifically to the source and amount of his income.

■ It is of primary significance that the Debtor filed his case under Chapter 13 of the Bankruptcy Code. Chapter 13 is entitled "Adjustment of Debts of an Individual with Regular Income." Pursuant to § 109(e) of the Bankruptcy Code, only "an individual with regular income" may be a debtor under chapter 13. The term "individual with regular income" is defined in § 101(30) to mean an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or commodity broker." Although "regular income" is broadly construed, a debtor must nevertheless establish the stability and regularity of that income. *In re Sigfrid,* 161 B.R. 220, 221 (Bankr.D.Minn.1993).

■ The essence of a Chapter 13 case is that the debtor submits a portion of his future income to a chapter 13 trustee for distribution to his creditors in accordance with a plan approved by the court. The payments and distributions must satisfy the requirements for confirmation contained in § 1325 of the Bankruptcy Code, such as the requirement that creditors receive at least as much as they would receive in a Chapter 7 case and, if an objection is raised, that all of the debtor's disposable income is contributed to the plan. Further, the debtor must be able to make all payments proposed under the plan from his future income pursuant to § 1325(a)(6) of the Bankruptcy Code. Consequently, the amount and stability of a debtor's income is critical to any Chapter 13 case, with the result that the inability of the trustee and the court to evaluate a Chapter 13 debtor's income necessarily impedes the administration of the bankruptcy case.

■ The Debtor in this case has not disclosed any information concerning his income. Accordingly, the Debtor's eligibility for relief under Chapter 13 of the Bankruptcy Code cannot be established, since no information is available upon which to determine whether the Debtor has "regular income" within the meaning of § 109(e).

■ The Debtor has proposed a Chapter 13 plan whereby he proposes to pay the Trustee the sum of $61.73 per month for 36 months, which would result in a 20 percent dividend to creditors according to the Debt-

or's calculations. Without any information regarding the Debtor's income, however, neither the Trustee nor the Court can determine whether the Debtor's plan satisfies the requirements for confirmation set forth in § 1325 of the Bankruptcy Code. It cannot be determined, for example, that the Debtor "will be able to make all payments under the plan" as required by § 1325(a)(6). Based on the incomplete budget filed by the Debtor, the Court cannot find that the proposed payments are feasible, or even that the Debtor's monthly income exceeds the monthly expenses listed by him. The inverse difficulty is also present, and neither the Court nor the Trustee can determine whether the Debtor is applying all of his disposable income to the plan as required by § 1325(b)(1)(B) of the Bankruptcy Code. If the Debtor were retaining substantial surplus income, while proposing to pay his creditors only 20 percent of their allowed claims, his plan would not be confirmable.

▪ Confirmation of a plan is the heart of a Chapter 13 case. Section 1321 provides that "[t]he debtor *shall* file a plan." (Emphasis supplied.) Section 1307 provides that the court may dismiss or convert a Chapter 13 case based on (1) the debtor's failure to timely file a plan; (2) the debtor's failure to commence making timely payments proposed by a plan; (3) the denial of confirmation of a plan and denial of a request for additional time to file another plan; (4) the debtor's material default under a confirmed plan; and (5) the revocation of an order confirming a plan. Clearly, "Chapter 13 was intended to enable an individual with regular income to develop and perform under a plan for the repayment of his debts over an extended term under court supervision and protection." *In re Wilson*, 168 B.R. 260, 262 (Bankr.N.D.Fla.1994). Any refusal to disclose information essential to confirmation of the plan impedes the basic administration of the bankruptcy case.

▪ Another factor to be considered is the propriety of the assertion of the privilege. As discussed previously, the privilege has been asserted in a broad, unsupported fashion with respect to all income, past and present, and even with respect to income which had been disclosed in earlier filings with this Court.

▪ Further, the Debtor asserts that the Trustee should seek an order of immunity for the Debtor. However, the Trustee does not have a duty to seek such an order on the Debtor's behalf. The Trustee has various duties in the administration of the case, *see* 11 U.S.C. § 1302, but seeking immunity for a Debtor who will not disclose his income is not one of those duties, and the Court will not impose such a duty on the Trustee in this case. While it may be appropriate for the Trustee to seek immunity for a Debtor in some instances, this is not one of those instances.

The Debtor has not stated why he cannot undertake the responsibility for obtaining an immunity order. Instead, he states only that the Trustee "may apply to the local United States Attorney for application by the latter for a Compulsion to Testify and Use and Derivative Immunity Order," and also states that he will answer the Trustee's questions if the Trustee secures an order of use and derivative immunity in the Debtor's favor pursuant to 18 U.S.C. § 6002–6004. The Debtor has not stated that he has attempted to obtain an immunity order in his own behalf, or that he is not a proper person to seek such an order.[2] Under these circumstances, the Debtor has not substantiated any reason why the burden should be shifted to the Chapter 13 Trustee to pursue privileges and benefits sought only by the Debtor.

The Debtor voluntarily filed his Chapter 13 petition to obtain the benefits of that chapter. As discussed below, there is no constitutional right to a discharge in bankruptcy, and a debtor seeks relief under the bankruptcy laws voluntarily. At the same time, the Debtor is suggesting that he be granted immunity from the use of information, necessary for the administration of his bankruptcy case, which might indicate that he has violated those or other laws. This is

---

**2.** The Court notes that in *Connelly, supra,* the debtor had attempted to obtain immunity, and that attempt had been unsuccessful. *In re Connelly,* 59 B.R. at 425, 426, 433.

not consistent with the historical purposes of the immunity laws.[3]

■■■■ A Chapter 13 case may be dismissed for cause. 11 U.S.C. § 1307(c). Cause includes lack of good faith. *In re Waldron*, 785 F.2d 936 (11th Cir.1986); *In re Elisade*, 172 B.R. 996 (Bankr.M.D.Fla.1994). To determine good faith in a Chapter 13 setting, the Court should consider, among other things, the Debtor's income from all sources, his degree of efforts, his ability to earn, the likelihood of fluctuation in earnings, and the burden which the plan's administration would place on the trustee. *In re Kitchens*, 702 F.2d 885, 888–89 (11th Cir.1983). Cause also includes the inability to administer a case due to a debtor's refusal to provide information. *Scarfia, supra,* citing *In re Connelly, supra.*

■■ The Court concludes that this case should be dismissed. The Debtor has not demonstrated credible reasons why responding to questions concerning his income poses a real danger of incrimination. Further, the information withheld by the Debtor is essential to necessary determinations in his Chapter 13 case, such as whether the plan proposed by the Debtor is confirmable and whether the Debtor is even eligible for relief under Chapter 13. The refusal to disclose the information impedes the administration of his Bankruptcy case.

■■ Although the issues raised by any assertion of constitutional rights must be thoroughly considered, it is also well-established that there is no constitutional right to a discharge in bankruptcy, and that a debtor's decision to seek Chapter 13 relief is willing and voluntary. *Scarfia*, 129 B.R. at 675. *See also In re Elisade*, 172 B.R. 996, 1001 (Bankr.M.D.Fla.1994) ("A debtor does not have a constitutional right to receive a discharge of his bankruptcy.... As such, when a debtor is faced with the possibility that continued assertion of the Fifth Amend-

ment may contribute to dismissal of his bankruptcy petition, he is not being required to 'forfeit one constitutionally protected right as the price of exercising another'.") (citations omitted).

There may be circumstances in a Chapter 13 case where the Fifth Amendment privilege may be properly asserted and the Chapter 13 case may be administered. The Court's holding, therefore, is specifically restricted to the facts before it in this case. On these facts, however, the case should be dismissed.

Accordingly:

**IT IS ORDERED** that the Motion to Dismiss filed by the United States of America and the Motion to Dismiss filed by Terry E. Smith, the standing Chapter 13 Trustee, are granted, and this case is dismissed.

**3.** "The existence of [immunity] statutes reflects ... the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime. Indeed, their origins were in the context of such offenses, (footnote omitted) and their primary use has been to investigate such of-fenses. (footnote omitted) ... The commentators, (footnote omitted) and this Court on several occasions, (footnote omitted) have characterized immunity statutes as essential to the effective enforcement of various criminal statutes." *Kastigar v. United States*, 406 U.S. at 446–47, 92 S.Ct. at 1657–58.